E. J. MOODY, ASSIGNEE, *vs.* C. B. HASELDEN AND OTHERS.

On 21st September, 1859, H. gave to E. two mortgages, one of land, and the other of slaves, to secure the payment of a debt due by notes. On 20th December, 1861, a considerable part of the debt being due and unpaid, E., by his agent, seized the slaves under his mortgage, but allowed them to go into H.'s possession, on a bond for their forthcoming on sale-day in March, 1862, and they remained in his possession, uncalled for, until they were lost by the general emancipation, in 1865. In January, 1860, H. sold and conveyed part of the mortgaged land to M., and in November, 1863, he sold and conveyed the other part to G. On bill, by the assignee of E; against H., M. and G, to foreclose the lien on the land: *Held,* That G. had an equity to require that the value of the slaves, at the time of the seizure, should be applied to the mortgage debt, and that the lien on the land, purchased by him, should be foreclosed only for the balance, if any, after such application.

Where there are mortgages of land and chattels to secure the payment of the same debt, and the mortgagee seizes the chattels after condition broken, a subsequent purchaser of the land from the mortgagor has an equity to compel the mortgagee to apply the value of the chattels seized to the mortgage debt, or show that they had been lost without fault, or legal responsibility, on his part.

Where the mortgagee, after seizure of the chattels, allows them to return into the possession of the mortgagor on a forthcoming bond, the legal possession is in the mortgagee—the mortgagor holding as his bailee.

BEFORE JOHNSON, CH., AT MARION, DECEMBER, 1868.

This case first came before his Honor Chancellor Johnson, at Marion, February, 1868, when he pronounced a decree therein as follows :

JOHNSON, Ch. On the 21st day of September, 1859, the defendant, Cyrus B. Haselden, purchased from Richard P. Ellerbe a tract of land lying and being in Marion District, and containing three hundred and nineteen acres, more or less, for the sum of six thousand dollars, payable as follows, to-wit: three thousand dollars on the first of December, 1859 ; one thousand dollars on the 1st of December, 1860; one thousand dollars on the 1st of December, 1861 ; and the remaining one thousand dollars on the 1st of December, 1862; with interest on each of the said sums from the 1st of December, 1859; and, for the purpose of securing the payment of the said sums of money, he gave his four several promissory notes for the same to the said R. P. Ellerbe ; and, for the purpose of the more effectually securing the payment of the sums, he gave to the said R. P. Ellerbe not only a mortgage on the said tract of land, but also a separate mortgage of seven negro slaves. Soon after the three thousand dollar note became due, it was paid by the mortgagor to the mortgagee. On the 20th day of December,

9

1861, William P. Campbell, the Sheriff of the said District, as agent of the said R. P. Ellerbe, seized upon the mortgaged slaves, with the intention of selling the same and extinguishing the mortgage debt, but the defendant, C. B. Haselden, in some way succeeded in getting their release upon entering into bond for their production at Marion C. H. on the first Monday in March, 1862. After which they remained in the possession of the said C. B. Haselden, without being sold, until they were emancipated.

On the 15th of January, 1860, the defendant, C. B. Haselden, sold and conveyed to William H. Moody eighty acres of the said tract of land, who is now in the possession of the same; and on the 20th of November, 1863, he sold and conveyed the balance of the said tract of land to Asa Godbold, Jr., who is now in the possession of the same.

The three remaining notes, and the mortgage, were transferred, by various assignments, until they passed into the possession of the complainant, who is now the legal owner of the same, and seeks, by his bill, to foreclose the mortgage on the land; but the defendants insist that the seven negro slaves were more than sufficient to extinguish the balance due on the mortgage debt, and that their seizure, after the condition of the same was broken, operated, in law, as a satisfaction of the mortgage debt; or, at least, that, upon condition of the mortgage being broken, the negro slaves became the property of the mortgagee, and that he must suffer the loss of their emancipation, and not the mortgagor.

Upon condition broken of a mortgage of personal property, the property becomes that of the mortgagee, to the extent that he is justified in seizing it and selling it, and applying the proceeds of the same to the payment of his debt; but he does not thereby become the absolute owner of the property, and is not subject to such a loss as that resulting from emancipation.

It is ordered and decreed, that the above opinion be taken as the judgment of the Court.

And it is also ordered and decreed, that it be referred to the Commissioner to ascertain the amount still due on said notes, and that, upon the coming in of his report, either party may apply, at Chambers, for further orders, after giving ten days' notice thereof to the opposite party.

Asa Godbold appealed against the decree, and the Court of Appeals, at May Term, 1868, pronounced judgment on the appeal, as follows:

INGLIS, A. J.   It is certainly true, *at law*, as is often affirmed in argument here, that a mortgage of personal chattels "conveys a legal estate to the mortgagee," which, subject originally to a condition of defeasance, becomes, upon non-perfor:.ance of such condition, absolute.— *Wolfe* vs. *Farrell*, 3 Brev., 68 ; S. C., Tread., 151. Hence, without any judicial proceeding, the mortgagee may then seize and sell the property in satisfaction of the debt or duty— *Johnson* vs. *Vernon*, 1 Bail , 527—and for this purpose may, even in the night time, enter upon the premises of the mortgagor, if he can do so without violating the criminal law.—*Satterwhite* vs. *Kennedy*, 3 Strob., 458.   He may, by assignment of his mortgage, transfer the legal title.—*Montgomery* vs. *Kerr*, 1 Hill., 291.   And he—or, after such assignment, his assignee—may, even before condition broken, maintain an action at law for recovery of damages for the conversion of the property, or a bill for its specific delivery, against a stranger—purchaser from the mortgagor or otherwise— who has it in possession.— *Wolfe* vs. *Farrell*, 3 Brev., 68 ; *Montgomery* vs. *Kerr*, 1 Hill,·291 ; *Spriggs* vs. *Camp*, 2 Speer, 181 ; *Bellune* vs. *Wallace*, 2 Rich., 80 ; *Bryant* vs. *Robert*, 2 Rich. Eq., 11.   It is equally true, however, that, in *equity*, this legal estate is regarded as merely put in pledge in the hands of the mortgagee, as a means whereby he may, himself, promptly and effectually enforce the fulfillment of some duty on the part of the mortgagor ; and that all which he is really entitled to is the performance of this duty, And hence, whenever, "within the known limits," this duty is fulfilled, though not at the day limited in the terms of the deed, the estate of the mortgagee is defeated, and the mortgagor holds the property disencumbered as before the execution of the mortgage.— *Walling* vs. *Aiken*, McMull. Eq., 13.   This nature and purpose of the mortgagee's estate is recognized by the statute law, when, by its limitation, it concedes that, even though the mortgagee assert his legal title, upon condition broken, and seize the mortgaged chattels, yet the mortgagor may, at any time within two years after such seizure, by the fulfillment of the duty intended to be secured, redeem his property.—A. A. 1712, Sec. 15, 2 Stat., 587 ; *Hogan* vs. *Hall*, 1 Strob. Eq., 323.

Where, under a mortgage exclusively of personal chattels, the mortgagee, upon condition broken, seizes the mortgaged property, and, instead of converting it into money, and applying the proceeds to the satisfaction of the debt or duty intended to be secured—as, in the regard of equity, and, usually, by the express terms of the

deed, he ought to do—chooses to retain the possession of the property, and appropriate it, *in specie*, to his own use, there may, perhaps, be ground to argue that this would operate as satisfaction of his secured demand, and that he ought to be precluded from any further or other remedy. There would be more apparent reason for such argument after the possession so acquired has continued throughout the statutory period. But upon these points this Court does not intend now to express any positive judgment. Certainly the mortgagee could not, in either of these cases, have such further or other remedy without first accounting for the true value of the property so seized, or showing its insufficiency.

Where the mortgage embraces both land and chattels, and, upon condition broken, the mortgagee elects to proceed, under the right conferred by the deed, to subject the chattels to the satisfaction of his demand—although the retention thereof by him, *in specie*, even throughout the full statutory period, would afford less ground to argue that such seizure and retention imported satisfaction *ipso facto*, since, by the concurrence of the parties on both sides, as evinced in the deed, the whole of the property of both classes was deemed necessary for the security of such satisfaction—yet he would not afterwards be allowed to proceed against the mortgaged *land* without accounting for the *chattels* which he had seized, and showing that these had failed, or, at least, had proved inadequate to work complete satisfaction, without legal fault on his part. Upon familiar principles of equity, the obligation to exhaust or account for that portion of the mortgaged property which had been seized before alienation by the mortgagor of the residue thereupon left in his possession, before the lien of the mortgage will be allowed to be enforced against such residue in the hands of the alienee or purchaser for value from the mortgagor, is, if possible, still more clear and indubitable.—*Fowler* vs. *Barksdale*, Harp. Eq., 164; *Gist* vs. *Pressley*, 2 Hill Ch., 318; *Bank* vs. *Howard*, et al., 1 Strob. Eq., 173; *Gadberry* vs. *McLure*, 4 Strob., 175. For, if there had been no seizure whatever until after alienation of part of the mortgaged property, it need scarcely be said that the purchaser for value from the mortgagor would have an equity to compel the mortgagee to resort first to so much of the mortgaged property as, upon the consummation of his purchase, was still retained by the mortgagor, and exhaust his remedy against that, before he could come upon what such purchaser had acquired. Still clearer, then, is this equity, where, by a seizure of other parts of the property,

he has, as it were, given notice to all dealing with the mortgagor for the residue, that this residue is, for the time, discharged, or its liability postponed.

In the case before the Court, the mortgages embraced both land and slaves remaining in pledge for the security of the balance of a debt, when, on "20th December, 1861, the mortgagee, by the Sheriff, as his agent or bailiff, seized the mortgaged slaves, with the intention of selling the same, and extinguishing the mortgage debt," appointed the day of sale, to wit, the first Monday in March, 1862, and returning, for the interval, the possession of the slaves to the mortgagor, took from him a bond, with security, conditioned for their forthcoming for sale on the appointed day. Certainly, by this proceeding, the mortgagor became, *quoad hoc*, the mere bailee of the mortgagee, and his possession was, in law, thenceforth the possession of the latter.

Third persons, at least, might safely so regard it. This possession continued from the date of seizure for the space of three years and four months, and until the slaves had been emancipated, and thus their value, as property, for the practical purposes of the mortgage, was lost. On the 20th November, 1863—nearly two years after this seizure of the slaves—the mortgagor sold and conveyed to the defendant, Asa Godbold, Jr., the last parcel of the mortgaged land which he had retained; and the mortgagee now, in his present bill, seeks to subject this land, in the hands of the alienee, to the satisfaction of the lien of the mortgage. We think the purchaser, Godbold, has an equity to require the mortgagee to show that the mortgaged chattels, seized nearly two years before his purchase, and so long retained in the possession, or under the control, and subject to the call of the mortgagee, have been lost, and so failed to produce actual satisfaction in full, or, at least, *pro tanto*, *without fault on his part*. But on this point the decree and the testimony are wholly silent. An opportunity will be given to supply, if it be possible, this showing, without which this Court hesitates to affirm, absolutely, the Circuit decree.

It is ordered that the cause be remanded to the Circuit Court for a further hearing upon the principles herein announced; and that the Commissioner do inquire and report to that Court the facts touching the seizure of the slaves, and the subsequent failure of the mortgagee to proceed, with diligence, to pursue the remedy against them, under his mortgage, which he had thus begun, and the causes thereof, together with any special matter touching the merits

of the controversy; and that thereupon, and upon such other proper hearing as may be had, the said Court determine whether the said chattels so seized were lost by, or without, the fault or legal responsibility therefor of the mortgagee, and make the appropriate orders that such determination may require.

The second decree of His Honor Chancellor Johnson, against which the appeal to the Supreme Court was taken, is as follows:

JOHNSON, Ch.   This case having been remanded by the Court of Appeals to the Circuit Court, upon certain points therein specified;. and the Commissioner having taken and reported testimony upon the points required, it appears that, at the time when Campbell, Sheriff, seized upon the negro slaves, mortgagee was absent in Florida, and that Campbell was never in the actual possession of the negroes; and that, in less than two years after the bond for the production of the negroes was taken, that the notes which were secured by the mortgage had been transferred to other parties; and that Haselden actually paid a consideration for forbearance on one of the notes after it had been transferred; and it is in proof that before two years after the bond was taken, Godbold became the purchaser of the land, knowing of the existence of the mortgage, and paying what might be regarded an inadequate price for the same in Confederate money; and that he has, subsequently to the emancipation of slavery, offered to pay twenty bales of cotton in satisfaction of the mortgage which it is sought to foreclose.  If it be admitted, (which it is not,) that the Act of 1712 applies to this case, it would be necessary to tack the possession of the slaves against several parties, to complete the statutory period—neither the mortgagee nor either of his assignees having had them for the space of two years.  But the terms of the Act are, that the possession of the mortgagee shall be " actual possession," and not mere " seizure in form of law only," which was not the character of the possession proved in this case, and the Act, therefore, cannot apply.  Was there such delay on the part of the mortgagee, and those holding under him, in enforcing their rights, that it operated as a fraud upon the rights of Godbold, a purchaser of the land, for valuable consideration ?  I think not, for it was during the existence of the war, and the stay law was passed in a day or two after the negroes had been seized, and the popular impression was, that it stopped the collection of all debts; and soon after that the money became so

depreciated that no person wished to enforce the payment of any claim which was well secured; and the debt for which the negroes was given certainly was well secured.

The opinion of the Court is, that the matter of defence set up by Asa Godbold, Jr., cannot be sustained, and that the mortgage on the land must be foreclosed.

' It is ordered and decreed, that the above opinion be taken as the judgment of the Court.

It is also ordered and decreed, that it be referred to the proper officers of the Court to ascertain and report the amount due and not paid on the notes which are secured by the mortgage, and which are held by the complainant.

The defendant, Asa Godbold, Jr., appealed, and now moved this Court to reverse the second decree of His Honor Chancellor Johnson, on the grounds:

*First.* Because, by the seizure of the slaves and their subsequent possession by the agent or agents of the mortgagee, the amount due, secured by the mortgage, was satisfied in law; and the plaintiff has shown no such equitable causes as will deprive the defendant, the subsequent alienee of the mortgaged premises, of his strict legal rights to insist on such satisfaction.

*Second.* Because His Honor erred in his conclusion that, because the notes due, and the mortgage, had been assigned to various par-ties, it would be necessary to tack the possession, in order to make the two years required by the Act of 1712; it being insisted that the seizure being made by the Sheriff, who was the agent of R. P. Ellerbe, the mortgagee, the possession of Haselden was that of his bailee merely, and continued in the Sheriff, as agent of each and every of the assignees of the mortgage, without any impediment to the sale, and when it was proven Confederate money would have been, and in fact was, received by the mortgagee.

*Third.* Because the offer of defendant to compromise or buy his peace was not an admission of plaintiff's right, and the evidence of such offer was objected to as incompetent, was so, and should not have any weight in deciding the legal rights of the parties.

*Harllee*, for appellant.

*Sellers*, contra.

May 8, 1869. The opinion of the Court was delivered by

WILLARD, A. J. The bill was filed to foreclose a purchase money mortgage, executed by defendant, Haselden, to R. P. Ellerbe, the assignor of plaintiff, September 21, 1859, to secure certain notes concerning the purchase money on a sale of the mortgaged premises by Ellerbe to Haselden. Godbold, the alienee of the mortgagor, was made a party, and answered, claiming that the mortgagee should account for the value of certain slaves which had been mortgaged to him by Haselden at the same time that he mortgaged the land as part security for the purchase money, and which had been seized for condition broken and held under the mortgage. The agent of the mortgagee, on seizing the slaves under the mortgage, returned them to the mortgagor, taking from him a forthcoming bond. They remained unsold until released under the general emancipation in 1865.

This case was before the Court of Appeals, at May Term, 1868, on appeal from a decree of Chancellor Johnson. That Court decided that the possession of the mortgagor under the forthcoming bond was the lawful possession of the mortgagee, the former being, *quoad hoc*, his mere bailee. Also, that the purchaser, Godbold, " has an equity to require the mortgagee to show that the mortgaged chattels, seized nearly two years before his purchase, and so long retained in the possession or under the control and subject to the call of the mortgagee, have been lost, and so fail to produce actual satisfaction in full, or, at least, *pro tanto*, without fault on his part." It was ordered, " that the cause be remanded to the Circuit Court for a further hearing, upon the principles herein announced, and that the Commissioner do inquire and report to that Court the facts touching the seizure of the slaves and the subsequent failure of the mortgagee to proceed with diligence to pursue his remedy against them under his mortgage, which he had thus begun, and the causes thereof, together with any special matter touching the merits of the controversy, and that, thereupon, and upon such other proper hearing as may be had, the said Court determine whether the said chattels, so seized, were lost by or without the fault or legal responsibility therefor of the mortgagee, and make the appropriate orders that such determination may require."

The questions left open by the decree were, therefore: *First.* Whether satisfaction of the mortgage debt had been lost through the fault of the mortgagee, as it regards the equity of the alienee to have such

satisfaction made out of the mortgaged chattel property; or, *Second.* Whether such mortgaged chattels had been lost without legal responsibility therefor on the part of the mortgagee.

The case subsequently coming before the same Chancellor, he held that there was no such delay on the part of the mortgagee in enforcing his right; "that it operated as a fraud upon the rights of Godbold, a purchaser of the land for valuable consideration;" and he decreed the foreclosure of the mortgage for the entire mortgage debt.

We do not think the Chancellor correctly apprehended the bearing of the decision of the Court of Appeals. Under that decision the mortgagee was bound to free himself from fault. The decree, without excluding the existence of fault, is based upon the idea that the delay did not operate as a fraud on Godbold. The difference is not unimportant. The appellate decree held the mortgagee to diligence in enforcing his remedies against the chattel property, as an incident of the equity established in Godbold. The Chancellor confined his inquiry to whether Godbold's rights, as a purchaser for a valuable consideration, had been invaded by conduct on the part of the mortgagee, operating fraudulently to defeat or impair them. Godbold's equity to demand diligence on the part of the mortgagee did not rest alone on his character as a *bonâ fide* purchaser for a valuable consideration, but upon the fact that the mortgagee held another security, which ought, in equity, to be enforced before calling upon the alienee to redeem the land by paying the mortgage debt. Want of diligence on the part of the mortgagee might exist, notwithstanding the conclusions arrived at by the Chancellor.

The grounds of excusing the delay set forth in the decree are, the existence of the war, the stay law, passed a day or two after the negroes had been seized, and the popular impression that it stopped the collection of all debts, and the depreciation of Confederate money that soon thereafter occurred; "that no person wished to enforce the payment of any claim which was well secured; and the debt for which the negroes was given certainly was amply secured." All this recognizes the entire independence of the mortgagee of any necessity of considering the interests of the alienee of the land, and supposes him to be bound only to consult his own interests in regard to delaying the sale of the chattel property, thus wholly ignoring the idea of diligence enforced by the decision of the Court of Appeals. The reasons thus assigned are insufficient to sustain the conclusions arrived at by the Chancellor.

---

Moody *vs.* Haselden.

---

In what manner the existence of the war justified delay on the part of the mortgagee is neither disclosed by the decree nor by the evidence. If at liberty to speculate on this subject, apart from all certainty of proofs, it would seem that prudence would have dictated a different course on the part of the mortgagee, in view of the eventualities of a war of great magnitude, jeopardizing all descriptions of property, and especially threatening the kind of property seized under the chattel mortgage. Wm. H. Moody, in his testimony, assigned the stay law as the cause of the delay in the sale of the slaves, but says nothing about the war.

The existence of the stay law has nothing to do with the case, as it did not pretend to interfere with transactions of this kind; nor can the popular impression to the contrary, if we are at liberty to assume the existence of such an impression, weigh anything in this Court. As well might the popular impression as to the state of the law, as between the mortgagee and the alienee of the land, be asserted to contradict the law of the case as declared by the Appellate Court. Neither has the depreciation of Confederate money anything to do with the case. Had the mortgagee offered the property for sale, and failed to realize an available currency in payment for it, a case for the consideration of the Court might have been presented. But such was not the case. The natural course for the mortgagee to pursue in that case was to appropriate the property, and, when called on to account for it, to allow its value on the mortgage debt.

. It is evident that the mortgagee assumed to deal with the chattel property, without regard to the equity of Godbold, and is chargeable with the loss.

The decree will be set aside, and the cause remanded to the Circuit Court for an account of the value of the mortgaged slaves seized and held by the mortgagee, to be computed at the time of such seizure; and if the value thereof shall equal the amount due on the mortgage set forth in the bill of complaint for principal and interest computed to the time of such seizure, then the Circuit Court will dismiss the bill; and if such ascertained value shall fall short of such mortgaged debt and interest, then a decree of foreclosure will be made by the Circuit Court for such balance, with interest thereon to the date of such decree.

*Moses*, C. J., concurred.