*EX PARTE* KNOBELOCH, *IN RE* WILBUR v. SMITH.

1. The provision in section 1826 of the General Statutes, that "no property shall be seized under a distress warrant for rent, except such as belongs to the tenant in his own right," applies as well to property found on the demised premises as to that which has been removed away.
2. After condition of a chattel mortgage is broken, the landlord cannot distrain the mortgaged property for rent due by his tenant, the mortgagor; because such property does not then belong to the tenant in his own right, but to the mortgagee.

Before WALLACE, J., Charleston, March, 1886.

This appeal involved the question whether a landlord could distrain on the demised premises for rent in arrear, personal property embraced in a chattel mortgage, then past due. The rent distrained for was all in arrears when the chattel mortgage was executed, and the mortgage was made to F. J. Smith, as trustee for certain creditors therein named. Other matters are stated in the opinion.

*Messrs. G. M. Trenholm* and *Bryan & Bryan*, for appellant.

*Messrs. J. E. Burke* and *Mitchell & Smith*, contra.

March 19, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. In September, 1884, William Knobeloch, as executor, leased to one William McComb two stores in Meeting street, Charleston, at the yearly rent of $1,300,

payable monthly. There was some delay in collecting the rent, and in April, 1885, the sum of $650 was due for rent in arrear. On April 8, 1885, the said McComb executed a mortgage of the stock of goods in the leased stores to F. J. Smith, trustee, for the purpose of securing certain promissory notes which he had given; and a few days thereafter, viz., on April 11, the said Smith, as mortgagee, claiming that the condition of the mortgage was broken, entered upon the premises, and took possession of the goods, the mortgaged property, and advertised it for sale, but did not remove it from the premises. On April 22, 1885, Knobeloch, the landlord, issued his distress warrant in writing and under seal, but without affidavit, to one E. F. Schachte, his agent, who was not a sworn constable or other official, who levied a distress upon the stock of goods still in the stores, and finding that F. J. Smith claimed to be in legal possession, he merely remained in a sort of joint possession with Smith's employees.

Soon after, other creditors of McComb instituted an action, *Theodore A. Wilbur* v. *Frederick J. Smith*, *et al.*, to set aside the mortgage as being fraudulent and void, and really an assignment giving preferences in violation of section 2014 of the General Statutes. The mortgagee, Smith, answered, denying the allegations, and Knobeloch presented his claim for rent under his distress warrant as stated. An order of court was taken that the mortgagee should sell the property, the rights of all parties to be transferred to the fund; and then that action was compromised and discontinued, leaving in the court money sufficient to pay the claim of Knobeloch for rent, if it should be established.

The claim was presented and argued before Judge Wallace, who disallowed it; and Knobeloch, the landlord, appeals upon the grounds following: "I. Because it was error in the presiding judge to dismiss the petition of appellant. II. Because his honor erred in not holding that the distress levied was lawful and valid. III. Because his honor erred in not holding that the stock of goods mentioned in the petition, upon which the distress was levied, was, while on the premises of the landlord, subject to such levy, and that a lien in favor of the petitioner was by said levy created prior in rank to that of the mortgagee. IV. Because his honor erred in not decreeing that the petitioner, appel-

lant, had, under the facts of the case, a lien for rent on the stock of goods, and in not decreeing that the said petitioner, appellant, be paid the amount of said rent and costs out of the proceeds of sale of the stock of goods," &c.

The main question in the case is, whether, under our law, the stock of goods in the possession of Smith, the mortgagee, after condition of the mortgage broken, although still remaining on the demised premises, was, on April 22, 1885, liable to be distrained by the landlord for rent in arrear. We derived our law of distress for rent from England, where rent for the use and occupation of land is a highly favored claim. It is manifest that the whole law upon the subject was framed in the interest of the landlord. The right is nowhere expressly given by statute, but it comes from the common law, which allowed the landlord, without the sanction of legal process, to issue his own warrant of distress, and deliver it to his bailiff, with authority to summarily seize all the goods and chattels, with certain known exceptions, which could be found on the demised premises, whether they belonged to the tenant or a stranger. This great power was defined, protected, and enlarged by certain statutory provisions, and notably by a statute "for the better security of rents, and to prevent frauds committed by tenants," which was made of force in this State (2 *Stat.*, 547), and generally known as the statute of Anne, which, among other things, provided that if the tenant fraudulently removed his goods from the premises to escape distress, the landlord, within five days, might follow and seize them under his warrant; "provided that nothing within this act contained shall extend or be construed to extend to empower such lessor or landlord to take or seize any goods or chattels as a distress for arrears of rent, which shall be sold *bona fide* and for a valuable consideration before such seizure made."

For a period, no part of the law of distress was of force in this State, having been repealed by the sweeping words of section 20 of the attachment act of 1868, which declared that "distress for non-payment of rent as heretofore existing is abolished." 14 *Stat.*, 106. But in June, 1877, the law of distress was re-enacted in terms well-nigh as sweeping and general as those of the repeal, viz., "That the first ten words of section 20 of an 'act to

regulate attachments,' approved September 4, 1868, be stricken out, and the rights and remedies in such cases, existing before the passage of said act, are hereby restored." 16 *Stat.*, 265. The effect of this was to bring back the law as it stood in 1868. *Mobley* v. *Dent*, 10 *S. C.*, 474.

In 1878 a more formal act was passed: "To restore the remedy of distress for rent," which not only repeated the repealing act of 1877, but went further, and affirmatively declared as follows: "And the said act, entitled 'an act for the better security of rents and to prevent frauds committed by tenants' (Anne) is hereby re-enacted and made of force in this State. Provided, that no property shall be seized under a distress warrant for rent except such as belongs to the tenant in his own right." 16 *Stat.*, 511. In 1882 the general statutes expressly re-enacted the provisions of the aforesaid statute of Anne—setting them out in full in sections 1824 and 1825, and then follows section 1826, in these words: "Nothing herein contained shall extend, or be construed to extend, to empower such lessor or landlord to take or seize any goods or chattels as a distress for arrears of rent which shall be sold *bona fide* and for a valuable consideration before such seizure made; *and no property shall be seized under a distress warrant for rent, except such as belongs to the tenant in his own right.*"

In this state of the law, it is strongly urged for the appellant that the above section of the general statutes (1826), having in it the very words of the proviso to the statute of Anne, must be construed to be nothing more than a proviso to that statute, and as that deals alone with property removed from the premises, the proviso must also be limited to property so removed, and does not apply to that which remained on the premises. This is most certainly a new view, and we must say an ingenious one. It is true the important words of section 1826, General Statutes, down to those italicized as quoted above, and ending with the words, "seizure made," are identical with those of the proviso of the statute of Anne, and doubtless the draftsman had the proviso before him when he framed that section. It cannot, however, escape observation, that the provision is neither stated as a proviso, nor makes any reference whatever to that statute, but ap-

pears as part of a distinct and independent section of the general statutes of the State.

But, passing that, under the construction contended for, what becomes of the remaining part of the section which is in italics? It is argued that inasmuch as it was placed in the same section with the proviso of the statute of Anne, it must be considered as only an amendment of that proviso, and must therefore relate only to such property as was removed from the premises. We cannot accept that construction. The provision in question was never any part of the statute of Anne. It is true that it first appeared as a proviso in the act of 1878, which, among other things, repeated the re-enactment of the statute of Anne, already made of force in 1877; but we do not think that it was intended to be merely a proviso to that statute. In the first place, the terms of that statute were not set out, but it was made of force by a general declaration to that effect; and then the statute of Anne, then being declared of force, contained within itself the proviso we have just considered, in reference to a *bona fide* sale of the goods removed, and consequently there was no need of a second proviso, protecting such property as did "not belong to the tenant in his own right." The property of a stranger was in danger of its being seized only when on the premises, and when removed needed no protection. Besides, the provision enacted in 1878, and formally repeated in the general statutes of 1882, is in positive terms clear and absolutely unlimited: "And no property shall be seized under a distress warrant for such (arrears) except such as belongs to the defendant in his own right." We cannot doubt that this provision, so solemnly enacted and re-enacted, and so general in its terms, was intended to be a distinct and independent provision of law, embracing all chattels whether removed or still remaining on the premises. Such has been taken to be the proper construction by this court in several cases. See *Wallace* v. *Johnson*, 17 *S. C.*, 456, and *Sullivan* v. *Ellison*, 20 *Id.*, 481.

The next question is, whether the stock of goods, when it was seized under the distress warrant on April 22, 1885, did, in the sense of the act, "belong" to McComb, the tenant, in his own right. In considering this subject we are obliged to assume that

the mortgage was *bona fide* and valid; for the proceeding which sought to set it aside as fraudulent and void was discontinued. What, then, was the intention of the words, "except such as belongs to the tenant in his own right"? Was it only to nega- tive the right of distress as to the property of a stranger which happened to be on the premises, or to include that which had belonged to the tenant, and he had transferred before levy of the distress? The terms are very broad, as it would seem, negativ- ing the right generally and making its allowance exceptional— that is, as we understand, in case it appears affirmatively that the property "belongs" to the tenant. One of the provisions of the statute of Anne, so often referred to, is that if there is a judg- ment against the tenant, the sheriff may not take in execution goods on the premises without paying to the landlord one year's rent, if so much be due; and it would seem, in reason and by analogy, that the landlord should be protected to the same extent against the mere lien of a mortgage. But in reference to a mort- gage of personal property, the relation of the parties is very much changed as soon as the condition is broken and the mort- gagee takes possession. The title to the property itself is then changed, and, as we suppose, can no longer be said to "belong" to the mortgagor. As stated in the case of *Reese* v. *Lyon*, 20 *S. C.*, 20: "There can be no doubt that upon breach of the con- dition of a mortgage of personal property the legal title to the property mortgaged becomes vested in the mortgagee." *Wolf* v. *O'Farrel*, 1 *Tr. Con. R.*, 151 (3 *Brev.*, 68), and *Trescott* v. *Smyth*, 1 *McCord Ch.*, 486. See, also, *Spriggs* v. *Camp*, 2 *Speer*, 181; *Bellune* v. *Wallace*, 2 *Rich.*, 84.

The case of *Trescott* v. *Smyth*, *supra*, was, like this, in refer- erence to the ownership of property seized under a distress war- rant. The act of 1799 (7 *Stat.*, 435) provided as follows: that "No slave shall be liable to be distrained, or shall at any time be distrained, for house rent, or any other rent, unless such slave shall belong to such person as may be lawfully liable to or charge- able with such rent," &c. John Smith, a tenant, was in arrears for rent, and his landlord distrained a negro woman, Molly, who was on the premises, but was under mortgage to one Grimke. It was held that Molly, being mortgaged, and the condition of the

mortgage broken, did not in the sense of the act "belong" to the tenant, mortgagor, and therefore was not liable to be distrained for rent due by him. In delivering the opinion of the court, Judge Colcock said : "The court unanimously concur with the presiding chancellor, that the negro was not liable for the distress for rent. The case is certainly within the spirit, if not the letter, of the act of 1799, which was intended to restrain the rigor of the common law upon this subject. The act declares that no slave shall be distrained, or shall at any time be distrained for house rent, or any other rent, unless such slave shall *bona fide* belong to such person as may be lawfully liable to, or chargeable with, the rent. Now, it cannot be said that this negro was *bona fide* the property of Mr. Smith ; she was mortgaged to Mr. Grimke. The time of payment had been passed for years. The only interest, then, which Mr. Smith could have in her was an equitable interest, which certainly was not a subject of distress," &c. As we interpret it, the present law goes further in mitigation of the rigor of the common law than did the act of 1799, and protects all property from distress for rent, unless it "belongs" to the tenant in his own right. It seems to us that this case is conclusive of the one before the court.

From the view taken by the court it will not be necessary to go into the points made as to the alleged irregularities and defects of the distress warrant.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.