In re BISHOP.

Ex parte M. HORNIK & CO. et al.

(District Court, D. South Carolina. April 29, 1907.)

1. BANKRUPTCY—POSSESSION OF PROPERTY—RIGHTS OF LANDLORD.

On an adjudication of bankruptcy against a tenant, the latter's property is in custodia legis, the landlord, being thereupon precluded from enforcing his rent claim by distress, is only entitled to proceed against the trustee in the bankruptcy court.

2. SAME—PREFERRED CLAIMS—RENT.

Under S. C. Civ. Code 1902, §§ 2427, 2428, 2429, giving a landlord a preferred lien for rent on a tenant's personal chattels, situated on the leased premises, enforceable by distress, on the tenant's being adjudged a bankrupt, the landlord possessed a preferred claim as against the

proceeds of such property for rent due to the date of the bankruptcy adjudication, as provided by Bankr. Act July 1, 1898, c. 541, § 64, subd. 5, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], giving priority to debts owing to any person who by the laws of the state is entitled to priority.

In Bankruptcy.

A. H. Smythe, for landlord.
B. C. Bettinger, for creditors.

BRAWLEY, District Judge. W. L. Bishop was a merchant, doing business in the town of Bowman, in the state of South Carolina, occupying a store in that town, which he rented from Samuel Dibble at the rate of $20 per month. The rent had been paid up to the 1st day of September, 1906, but was due from that date. On February 4, 1907, Bishop was adjudged a bankrupt on his own petition, and the case was referred to the referee, John S. Bowman, Jr. On February 18, 1907, the first meeting of creditors was called, and N. A. Hunt was elected trustee. Dibble filed proof of his claim as landlord, claiming to be a preferred creditor, and entitled to the preference out of the sale of the goods. At that date the stock of merchandise belonging to the bankrupt was in the store, and remained there for several days after. No objection was made to the reception of the claim as a preferred claim. Hunt, the trustee, and his counsel, W. L. Glaze, were both present. It was agreed that as the store would probably be occupied until the 1st of March, the claim should be made as of that date. Dibble owed the bankrupt $8.12, so that this being deducted from the six months' rent of $120 leaves $111.88, for which amount Dibble filed proof, as landlord, as a preferred claim. The meeting was then adjourned until the 25th day of February. On that day, the goods having been in the meantime sold and removed, an order was made by the referee allowing the claim of the landlord for the amount of $111.88, and the same ordered to be paid by the trustee. Attorney for the trustee was present at this meeting, and made no objection to the order. It is conceded that the proceeds of the sale of the goods were largely in excess of the claim of rent, so that if the rent is a preferred claim, there is enough from the proceeds of the sale of the goods, in the hands of the trustee, to pay the rent in full and leave a surplus. Subsequently a petition was filed by N. A. Hunt & Company and M. Hornik & Company, asking to set aside the order by the referee on February 25, 1907, and disallow the preference claimed by Dibble. The court ordered the record certified by the referee, and upon the certificate and supplementary certificate and the record in the case, this hearing has been had.

The question presented is whether or not the claim of the landlord for rent since the 1st day of September is entitled to priority of payment out of the proceeds of the sale of the goods. The petitioners allege that inasmuch as he never exercised his right as landlord by a distraint, he has no lien or right to priority of payment. Section 64 of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 563, [U. S. Comp. St. 1901, p. 3447], sets forth the order of priority of claims against the bankrupt act, and under subdivision 5 is classified:

153 F.—20

"Debts owing to any person who by the laws of the states or of the United States is entitled to priority."

The question is whether the rent is by the law of the state of South Carolina entitled to priority over other claims. The history of the rights of the landlord in the matter of rent is stated by the Supreme Court of South Carolina in the case of Ex parte Knobloch, 26 S. C. 333, 2 S. E. 612, as follows:

"We derive our law of distress for rent from England. * * * The right is nowhere exactly given by statute, but it comes from the common law, which allowed the landlord without sanction of legal process to issue his own warrant of distress and deliver it to his bailiff, with authority to summarily seize all the goods and chattels, with certain known exceptions, which could be found on the demised premises, whether they belonged to the tenant or a stranger. This great power was defined, protected, and enlarged by certain statutory provisions, and notably by a statute * * * known as the 'Statute of Ann,' which, among other things, provided that if the tenant fraudulently removed his goods from the premises to escape distress the landlord, within five days, might follow and seize them under his warrant, 'provided that nothing within this act contained shall extend or be construed to extend to empower such lessor or landlord to take or seize any goods or chattels as a distress for arrears of rent, which shall be sold bona fide, and for a valuable consideration before such seizure made.'"

The provisions of the statute of South Carolina under which this priority of payment is claimed is to be found in section 2427 of the Code of Laws of South Carolina 1902, which is as follows:

"Sec. 2427. No goods or chattels whatsoever lying or being in or upon any messuage, lands, or tenements, which are or shall be leased for life or lives, term of years, at will or otherwise, shall be liabe to be taken by virtue of an execution or any pretense whatsoever, unless the party at whose suit the said execution is sued out, shall before the removal of such goods from off the said premises, by virtue of such execution or extent, pay to the landlord of the said premises, or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking of such goods or chattels by virtue of such execution: Provided, that said arrears of rent do not amount to more than one year's rent; in case the said arrears shall exceed one year's rent, the party at whose suit such execution is sued out, on paying the said landlord or his bailiff one year's rent, may proceed to execute his judgment and the sheriff or other officer is hereby empowered and required to levy and pay to the plaintiff as well the money so paid for rent as the execution money."

In the following section (2428) the right was given to the landlord to take and seize the goods and chattels either upon the premises or within 10 days after they had been removed therefrom. The next section (2429) however, provides that the landlord should not be entitled to seize any goods or chattels as a distress for rent which had been sold bona fide and for valuable consideration, before such seizure was made.

In the Case of Knobloch, above quoted, the court held, where the tenant had executed a mortgage on the property, that after condition broken, it no longer belongs to the tenant in his own right, and therefore was not liable to distress. The result of these decisions was a proviso to section 2429, which, while protecting the rights of the mortgagee whose mortgage antedates the contract under which the tenant entered, postpones the claim of a mortgage made under such con-

tract to the landlord's prior right to distraint. In the case of Bischoff v. Trenholm, 36 S. C. 75, 15 S. E. 346, the question arose whether the landlord could distrain for rent after the tenant had made assignment for the benefit of his creditors, and the court held that, as the property no longer belonged to the assignor in his own right after assignment had been made, it was not subject to distress in the hands of the assignee. The result of this decision was a further amendment to the law, found also in the proviso of section 2429, which protected the rights of the landlord to levy and distrain on property in the hands of the assignee or the tenant.

While a voluntary proceeding in bankruptcy is in effect equivalent in some respects to an assignment for the benefit of creditors, there is this essential difference—that inasmuch as the adjudication of bankruptcy is a judicial act, and thereby the property is taken in custodia legis, the landlord cannot distrain upon such property. It would be a contempt of the court for any constable or any other agent of the landlord to interfere with the possession of the court. If such a levy was attempted, the landlord would gain nothing by it. In the case In re Duble, 9 Am. Bankr. Rep. 121, 117 Fed. 794, it was held that:

"A landlord, who, after his tenant, owing more than a year's rent, is adjudged bankrupt, distrains for the full amount of the rent due, takes nothing by the proceeding, as all the goods of the bankrupt are in custodia legis; but he is entitled out of the proceeds of the sale thereof to the year's rent, as a preferred claim under the Pennsylvania statute, and preserved by the bankrupt act."

See, also, In re Gerson, 2 Am. Bankr. Rep. 170.

The court, however, holds that inasmuch as by this action in taking possession of the property the landlord is prevented from making an actual levy and distress, that the court will permit him to present his claim as a preferred claim, and claim in priority what is due to him as landlord. In re Hoover (D. C.) 113 Fed. 137, the court, citing the act of Pennsylvania, similar in effect to the act of South Carolina, held:

"The bankrupt court having taken possession of this property thus liable for the rent, its process whereby the same was sold must, for the purpose of this statute, be regarded as an equitable execution. The case is within the equity of the statute."

And the claim for rent due at the time of taking such goods under the adjudication in bankruptcy, not exceeding one year's rent, was allowed.

If the court thus prevents by its seizure the distress by the landlord, has the landlord a lien which he can enforce by petition or proper proof of debt against the proceeds of goods in the hands of the court? In his valuable treatise on Bankruptcy (5th edition, p. 505) Collier draws a distinction between a lien and a debt entitled to priority, and says under the head of liens:

"As previously stated, mere liens are not priorities. As where under a statute a distress for rent creates a lien upon the property distrained, the lessor has no lien upon the property if the proceeding was instituted after the lessee was adjudicated a bankrupt, but is entitled to his rent as a pre-

ferred claim out of the proceeds of the sale of the property"—citing numerous authorities.

In the case of Lambert & Bro. v. De Saussure, Assignee, 4 Rich. Law, 248, the rubric is as follows:

"A tenant, against whom there was a fi. fa. under stay, made an assignment for the benefit of creditors of furniture in the house which he occupied as tenant. The execution creditor agreed that the assignee might sell the furniture and hold the proceeds subject to all legal liens. After the assignment, but before the removal and sale of the furniture, the rent fell due. Held that the assignee was bound to pay the rent in preference to the debt under the fi. fa."

In the case of In re Wynne, 1867, the question as to whether or not a landlord could be held to have a lien for rent due was considered by Chief Justice Chase under the laws of Virginia, which are practically the same as the laws of South Carolina. 4 Nat. Bankr. R. 23–31, Fed. Cas. No. 18,117. In the very learned opinion the Chief Justice discusses the question whether at the time of the filing of the petition in bankruptcy the landlord had any lien for rent upon the property of the bankrupt, and the court says:

"And in considering the question now to be disposed of, we may lay out of view the proceeding by distress warrant, and also the proceeding by attachment. As we understand the bankrupt act, all the rights and all the duties of the bankrupt in respect to whatever property, not expressly excluded from the operation of the act, he may hold, under whatever title, whether legal or equitable, and however encumbered, pass to and devolve upon the assignee at the date of the filing of the petition in bankruptcy. And all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed, though in cases where jurisdiction has been previously acquired by state courts of a suit brought in good faith to enforce a valid lien upon property such jurisdiction will not be divested. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841. Whether, therefore, the distress warrant, or the attachment, be regarded as a proceeding for obtaining or enforcing a lien, each was equally unwarranted. Buckey v. Snouffer, 10 Md. 149, 69 Am. Dec. 129. If a lien for rent existed, it was a lien to be discharged by the assignee and enforced in the United States Court of Bankruptcy. If it did not exist, it could not be brought into existence by any proceeding whatever.

"The real question is, were the goods on the premises demised to the bankrupt subject to a lien for rent under the state law when the petition was filed, independently of any proceeding by distress or attachment?

"Liens are of various descriptions, and may be enforced in different ways; but we think it sufficient to say here, what seems to us well warranted in principle and authority, that whenever the law gives a creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of this debt. And we think that a lien of this sort is given.

"We cannot doubt that this statute creates a lien in favor of the landlord, and a lien of a high and peculiar character. We have no concern with the policy of this legislation. It is upon the statute book, and the lien it creates must be respected and enforced."

Shortly thereafter the same question came up before this court, in Re W. J. Trim, 5 Nat. Bankr. R. 24, Fed. Cas. No. 14,174. In discussing the question the learned district judge cited and rested upon the opinion of Chief Justice Chase in the analogous case of Chas. H. Wynne, and after referring to that opinion says:

"This lien is not dependent on a distress warrant or an execution. The charge on the property, or the proceeds of the property, is a charge, because, by the statute, where there is an execution, the charge is paramount to the levy itself. It ranks the levy. The very fact that it is paramount to the levy proves that it is a lien. It is not necessary that in point of fact there should be an execution. But if there were, in the language of the Chief Justice, 'would it not be trifling with the plain sense of words' to say that 'the claim which by law is made superior to the lien is itself not a lien?' The statute creates a lien, not the execution. It creates a charge upon the property which excludes even an execution. The lien, so far from being created by the execution, ousts it. If it had not a previous existence, how could this be? The property then in the hands of an assignee is in the hands of the law, as much as if in the possession of the sheriff, and to be disposed of subject to this charge, and against all other liens; the highest possible lien being a levy which is the consummation or execution of an execution."

The same question afterwards came up before the Supreme Court of the United States in the case of Longstreth v. Pennock, 20 Wall. 575, 22 L. Ed. 451, under the statute of Pennsylvania, which is practically the same as the statute of South Carolina. The facts were similar to those in the case now under consideration. The opinion of the Supreme Court is as follows:

"The assignee acquired his title to the movable property found on the demised premises, subject to the rights of all other persons. The rent in question was for a period which terminated when the assignee took possession, and the entire period was within a year of that time. Before the commencement of the proceedings in bankruptcy, the defendants in error might have distrained; and it is agreed that the property upon the premises was more than sufficient to satisfy the demand. The statute of Pennsylvania of June 16, 1836, provides that, where property under such circumstances is seized and sold under execution, the rent due for a period not exceeding one year shall be paid first out of the proceeds of the sale. This case is within the equity of that statute. The question presented is one belonging to the local law of Pennsylvania. We think it was correctly decided by the Circuit Court."

In the case of Wilson v. Pennsylvania Trust Company, 114 Fed. 743, 52 C. C. A. 374, the statute of Pennsylvania, to which reference has already been made, was under consideration. The court in discussing the question and the consequences that follow, as to the landlord's claim for rent where his tenant had been adjudged a bankrupt, says:

"In the first place, under the Pennsylvania act of 1836 the landlord will be entitled to priority of payment out of the proceeds of sale of the tenant's goods upon the demised premises to the extent of one year's rent."

In the case In re Mitchell, 8 Am. Bankr. Rep. 324, 116 Fed. 87, decided 1902 under the present act, the question is discussed at length with a full citation of the decisions bearing upon it, and the result as stated in the rubric is as follows:

"By virtue of the statute of Delaware (similar to the statute of South Carolina), a landlord has, as against creditors of his tenant, a lien, charge, or preference on the goods and chattels of his tenant on the demised premises for rent growing due for the balance of the renting year, and this right of the landlord will be recognized and enforced as against the proceeds of such goods and chattels when sold by a trustee, in proceedings in bankruptcy against the tenant."

It is therefore ordered, adjudged, and decreed that the landlord, Samuel Dibble, is entitled to be paid out of the proceeds of the sale of the goods the full amount of rent due him from the 1st day of September, 1906, to the 4th day of February, 1907, the date of the adjudication in bankruptcy, at $20 per month, deducting therefrom the balance due by him to the bankrupt of $8.12, amounting to $94.56, and that he be paid by the trustee as part of the expenses of administering the estate and from the funds of the estate rent for the said premises from the 4th day of February, 1907, the date of the adjudication in bankruptcy, to the date when the possession of the said property was turned over by the trustee to the said Samuel Dibble at the rate of $20 per month. Further ordered that, except as herein modified, the order of the referee made on February 25, 1907, be, and the same hereby is, confirmed, and that the petition of Hunt & Co. and Hornik & Co. be dismissed with costs.