### NATIONAL EXCHANGE BANK v. HOLMAN.

1. In action to recover the balance due on a note secured by a chattel mortgage after seizure and sale of the mortgaged chattels, the defendant pleaded payment by agreement of the plaintiff to accept the mortgaged property in full discharge of the debt; but there was no testimony to support this defence. *Held,* that the court would not consider the defence raised in argument that the debt was destroyed by a sale in a county other than that in which the property was found. 18 *Stat.*, 124.

2. If mortgaged chattels be sold in a county other than that provided for by statute, do the seizure and sale operate to extinguish the debt?

Before Norton, J., Barnwell, November, 1888.

This was an action by the National Exchange Bank of Augusta, Ga., against W. A. Holman, commenced in June, 1887. The opinion states the case.

*Mr. James O. Patterson,* for appellant.

*Messrs. Croft & Chafee,* contra.

July 1, 1889.　The opinion of the court was delivered by

Mr. Justice McGowan.　It seems that in the year 1885, James E. Davis purchased from J. Z. Dunlap, of Aiken, a lot of law books, for which he gave his note, and to secure it, a mortgage of the books; that Dunlap transferred the note and mortgage to the plaintiff bank; and when it fell due, Davis not being able to pay the debt, sold the books, with the consent of the bank, to Holman, the defendant, took his note for the same, and transferred it to the bank, the agreement being that the mortgage given by Davis was still to stand and bind the books in the possession of Holman, the object being, as it would seem, to substitute for the note and mortgage of Davis to Dunlap the note and mortgage of Holman to Davis, assigned to the bank. Holman was a citizen of Barnwell County, and being unable to pay his note when it fell due, he wished to surrender the books in discharge of the debt; but the bank was unwilling to do that, and, the condition of the mortgage being broken, they (the bank) through W. R. Peoples, as their agent, took possession of the mortgaged books, had them carried to Aiken, an adjoining county, where, after full notice and advertisement, they were sold at auction, and the net proceeds of the sale ($174.60) credited on Holman's note, leaving still due a balance of $150.40, to recover which the action was brought.

The defendant made two defences: *First,* a general denial; and *second,* "That the note described in the complaint has long since been discharged by payment by the defendant delivering to W. R. Peoples, the agent of the plaintiff, a certain lot of law books; and further, that the said books were delivered to the

said Peoples as agent as aforesaid, upon the express condition that the said note should be at once returned and delivered to the defendant herein fully satisfied and discharged," &c.

The facts were proved as herein stated, and, under the charge of the judge, the jury found for the plaintiff the balance still due upon the note—$178.15; and the defendant appeals to this court upon the following exceptions: "1. Because his honor, the presiding judge, erred in charging that a seizure of a mortgaged chattel by the mortgagee for the purpose of a sale, and a sale irregularly made, not in compliance with the statute regulating such sales as to time, place, and manner, was a mere irregularity and not a conversion by the mortgagee, and would not entitle the mortgagor to a satisfaction in full of the mortgage debt.    2. Because he erred in charging that if there was an irregularity in the sale, the defendant would have a right to sue the plaintiff for any damages caused by that irregularity.    3. Because he erred in charging that the taking of the property and selling it at a place not contemplated by law, or after advertisement not in accordance with the law, would be an irregularity in the sale, which, if pleaded as a counter-claim, might be admissible as a defence for whatever damages defendant had sustained by reason of that irregularity; whereas it is respectfully submitted that he should have charged the jury that when a mortgagee takes possession of the mortgaged property, and converts it to his own use without a sale, or when a sale is made neither in conformity with the statute nor the consent of the mortgagor, it operates as a satisfaction of the mortgage debt," &c.

It was shown that the defendant executed the note sued on; that with his assent it was assigned to the plaintiff, and that the books in his possession were still subject to the mortgage executed by Davis.   The defendant failed to show that, at the time of the seizure there was any agreement in fact that the books were taken in satisfaction of the debt, and the rights of the parties must be determined by law.   It is quite clear that the defendant-mortgagor owed the note sued on, and was liable to a personal judgment for any balance that might remain unpaid, after properly selling and applying the proceeds of sale of the mortgaged property on the note.   If the plaintiff had gone into equity to

foreclose his mortgage, the first order would have been to sell the mortgaged property; and, after crediting the proceeds of sale upon the debt, then second, to give a personal judgment against the debtor for the balance left unpaid. But the plaintiff was not bound to go into equity to foreclose. The subject being personalty, and the condition broken, he had the legal title and the right to take the property into his own possession and sell it fairly after proper advertisement at public sale, and crediting the net proceeds of the sale on the debt, to recover judgment against the mortgagor debtor for the balance. *Straub* v. *Screven*, 19 S. C., 449; 3 *Pom. Eq. Jur.*, sec. 1229, where it is said: "Upon a breach of the condition contained in the mortgage, the legal title rests so completely in the mortgagee that all the rights incident to ownership and possession in law, at once arise. By taking possession of the property and selling it at public sale upon due notice, he will then extinguish every right and interest at law of the mortgagor," &c.

This certainly was the general law down to 1882, when the legislature passed the act (18 *Stat.*, 124) regulating the advertisement and sale of personal property under a chattel mortgage, which provides "that the mortgagee or person holding the instrument, &c., shall advertise the time and place of said sale by posting a notice thereof in writing. at least 15 days before such sale in 3 public places in the county in which such personal property may be found, one of which shall be at the court house door, or shall publish the same at least two weeks in a newspaper published in his county, unless the person making such mortgage, or his legal representative, shall consent, or shall have consented, to a sale in some other mode or on some other notice," &c., &c. It is insisted that the alleged sale of the books not having been made in precise accordance with the act, in that they were not sold in the County of Barnwell, where they were "found," but in the adjoining County of Aiken, it must be considered that the whole proceeding was void. It is not suggested that there was any unfairness in the sale, or any want of full notice both by advertisement in a newspaper and printed hand-bills, or that the property brought less in Aiken than it would have done in Barnwell. But the naked point is made that in law there was no sale at all,

and the plaintiffs, having converted the property to their own use without sale, must be held to have incurred the penalty imposed in such case, viz., "satisfaction" of their whole debt, without any reference whatever to the value of the mortgaged property.

The Circuit Judge charged the jury that the seizure of the property under the mortgage for the purpose of a sale, and a sale, was not a conversion to their own use by the plaintiffs which avoided the whole proceeding; that the sale of the property in Aiken instead of Barnwell County was a mere irregularity, and if the defendant was damaged thereby, he had his recourse by suing the plaintiffs. Was this error? This must depend upon the construction of the act. If it had created a new right, not before allowed by the general law, as, for example. the right of a mortgagee in a chattel mortgage after condition broken, to seize and sell the property at public sale, and credit the proceeds upon the mortgage; and in granting such new right the act had prescribed the forms and terms of the sale provided for, we would have no doubt that all the regulations stated would be regarded as mandatory in character, and, as a consequence, to be strictly pursued, as the condition on which alone the party could entitle himself to the benefit of the act. As, however, the act did not grant a new power, but only imposed certain duties as to an old one—did not create a right to sell, but only undertook to regulate one already existing—does it follow that the legislature must have intended that all the regulations declared should be followed at all events and in exact conformity with the prescribed details, as a condition precedent to the validity of the sale?

It will be observed that the act simply prescribes certain regulations as to the sale, without negative words or imposing any penalty for non-compliance. As no injury really resulted from the sale being made at Aiken instead of in Barnwell County. we do not see why the plaintiffs should be precluded from recovering the remainder of their debt, after crediting the proceeds of the sale of the mortgaged property. The question is not whether the statutory regulations should be conformed to as law, but whether in character they are so exclusive as that technical non-conformity in a single particular must operate as a discharge of the whole debt. The object being to secure a fair sale and appli-

cation of the proceeds, it would seem that the error complained of was not of the essence, but merely the manner of the thing.

In *Monk* v. *Jenkins* (2 Hill Ch., 9), Chancellor Harper said: "Where a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing a mode in which the act shall be done, here the mode pointed out must be strictly pursued. It is a condition on which alone a party can entitle himself to the benefit of the statute, that its directions shall be strictly complied with, otherwise the proceeding will be void. But when a proceeding is permitted by the general law, and an act of the legislature directs a particular form and manner in which it shall be conducted, then it will depend on the terms of the act itself whether it shall be considered merely directory, subjecting the parties to some disability if it be not complied with, or whether it shall render the proceeding void," &c. In *State* v. *Massey* (2 Hill, 379), it was held that the act of 1799, directing jury lists to be made out from the tax returns once in every three years, was held to be merely directory to public officers in the discharge of their duty ; and if the requirement was disregarded and the act was nevertheless done, such act was not thereby rendered void. In *McNamee & Co.* v. *Huckabee* (20 S. C., 200), it was stated that the act which required the county auditor to put his endorsement upon every deed of real estate before it was recorded, was directory merely, and the registry was good without such endorsement. In *Darnall & Susong* v. *Darlington* (28 S. C., 256), under this very act of 1882, the point made here did not arise, for there the mortgagor "consented" that the sale might be made in Savannah, which made long notice unnecessary. It was held that the mortgagee was entitled to recover the deficiency which remained after applying to the debt the proceeds of sale "especially in the absence of testimony that the sale was not fairly made and for a good price."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER concurred in the result only, for the reasons stated in his separate opinion, which was as follows :

I concur in the conclusion that the judgment of the Circuit

should be affirmed, upon the ground that the defendant having, by his answer, rested his defence of payment upon the ground that the plaintiff had agreed to receive the mortgaged property in satisfaction of the mortgage debt, and having wholly failed to adduce any evidence of any such agreement, judgment necessarily followed in favor of the plaintiff so soon as the mortgage and the debt which it was intended to secure were established, as to which there was no real controversy.

It is true that the defendant, in his argument, having made the question whether the mortgage debt had not been extinguished by reason of the sale of the mortgaged property at a different place from that prescribed by statute, the Circuit Judge proceeded to instruct the jury that this was a mere irregularity, and that such irregular sale would not operate as a conversion of the mortgaged property by the mortgagee to his own use and a consequent extinguishment of the mortgage debt, or a waiver of all claim for any deficiency of the mortgage debt that might be left unpaid by such irregular sale. But that was a point not raised by the pleadings and could not properly arise in the case thus made. The defence really relied on by the defendant was the second defence set up in the answer, the first defence—the general denial—having been practically abandoned. So that as a matter of fact the only issue raised by the pleadings, and the only issue which the jury were called upon to try, was, whether the plaintiff had accepted the mortgaged property under an agreement to receive the same in satisfaction of the mortgage debt. That defence rested solely on an alleged agreement, and the defendant having wholly failed to establish such agreement, or, indeed, to offer any competent evidence tending to establish the same, the plaintiff was, of course, entitled to judgment; and it was not competent for the defendant to insist in argument upon another defence, resting upon a wholly different ground from that of contract, which was pleaded.

It is one thing for a mortgagee to agree to receive, and actually receive, the mortgaged property in payment of the mortgage debt, and quite another thing for the mortgagee to waive or destroy his claim for any deficiency by violating the law in the sale of the mortgaged property. One is a defence of payment rest-

ing on contract, upon the principle that anything accepted as payment shall operate as such, while the other rests upon a totally different principle—a forfeiture consequent upon a violation of law, and has in it no element of contract whatever. Hence even if the Circuit Judge did err in instructing the jury as to a point which could not properly arise under the pleadings, this would constitute no more ground for a new trial than if he had erroneously laid down an abstract principle of law, entirely foreign to the issues raised by the pleadings.

I am not, however, prepared to assent to the proposition upon which Mr. Justice McGowan's opinion rests, that the failure to advertise and sell the mortgaged property in the manner prescribed by statute was a mere irregularity ; but, on the contrary, it seems to me that the true rule was laid down in the *dictum* (for it is conceded to be nothing more than a *dictum*) in *Darnall & Susong* v. *Darlington* (28 S. C., at page 258), which may be more correctly stated as follows : where a mortgagee of personal property takes possession thereof and converts it to his own use, without a sale, or where a sale is made neither in accordance with the terms of the statute nor in accordance with the wishes and consent of the mortgagor expressed in writing, he thereby waives all claim for any deficiency, and can maintain no personal action against the mortgagor based upon the mortgage debt. This view is not only supported by authority (*Jones on Chattel Mortgages,* section 711), but is founded in good reason. The power with which a mortgage creditor is invested to seize and sell the property of his debtor, without the aid of judicial process, and before the validity and amount of his debt has been judicially ascertained, is a very high power and should be strictly guarded against abuse. Accordingly the legislature has, very properly, by the act of 1882 (18 *Stat.*, 124), amending section 2348 of General Statutes, undertaken to declare how this high power shall be exercised, and I do not see by what authority this court can undertake to dispense with any of the safeguards which the legislature has seen fit to throw around persons exposed to the exercise of such power.

True, it may be said that, after condition broken, the mortgagee of personal property is the absolute owner of such property, and

therefore when he seizes and sells it, he is selling his own, and not the property of another. But while it may be true that the mortgagee has the absolute *legal* title, yet it is well settled that he does not hold the property as his own, but subject to the mortgagor's right to redeem before sale, and even after sale subject to the mortgagor's right to demand an accounting for the proceeds of sale. So that in fact the mortgagee is not the real owner of the property absolutely in such a sense as to enable him to use it as his own. And if he undertakes to convert it to his own use, he is still liable to account to the mortgagor for any excess in its value over and above the mortgage debt; and if such value is less than the mortgage debt, he forfeits or waives all claims against the mortgagor for any deficiency, by reason of his illegal conduct in dealing with property entrusted to him for a specific purpose and to be dealt with in the manner prescribed by law. So if the mortgagee undertakes to sell in any other way than that prescribed, he thereby converts the property to his own use, and the same consequences follow.

It does not seem to me that the cases cited in the opinion above referred to are sufficient to sustain the view there taken. The first case was *Monk* v. *Jenkins* (2 Hill Ch., 9), in which the plaintiff, as administrator of Judy, a woman of color, filed a bill against the executors of her former master for the delivery of certain property alleged to have been given her by the will of her former master, under the allegation that she had been duly emancipated on the 14th of April, 1806, by a deed of manumission. The defendants set up two defences: 1st, that no such deed as was required by the act of 1800 had ever been executed; 2nd, that the alleged deed had never been recorded within the prescribed time. The Circuit Chancellor dismissed the bill for want of jurisdiction, as the proper remedy was at law, but he also overruled both defences. Notwithstanding this the defendants appealed from so much of the decision as overruled their pleas; and made the further ground that the plaintiff, or rather his intestate, had no civil *status*, having never been legally emancipated, and hence the bill could not be maintained.

Inasmuch as the bill had been dismissed, and there was no appeal therefrom by the plaintiff, it is somewhat difficult to un-

derstand how the appellants could have any standing in the Court of Appeals. Nevertheless that court did entertain the appeal, and Chancellor Harper, after sustaining the decision below overruling the two defences set up in the answer, proceeds to consider the question whether Judy had been legally emancipated (a question which, so far as I can perceive, was not considered below), and reaches the conclusion that neither the former master of Judy nor his executors could dispute the validity of her emancipation, even if there had been no deed, because it appeared that she had been in the unintercupted enjoyment of freedom from the date of the deed to the time of her death, and was recognized as a free person by the will of her former master.

It is quite clear, therefore, that anything said in the opinion as to the validity of the mode of emancipation was a mere *dictum*. The learned chancellor, however, did proceed to consider the question whether the failure to observe all of the requirements of the act of 1800 would invalidate the emancipation, and as even *dicta* from such an eminent jurist are entitled to the highest respect, I will proceed to consider whether that which he said is applicable to the present case. After laying down the general rule as quoted in the opinion of Mr. Justice McGowan, he proceeds to consider the terms of the act of 1800, in which he finds "a plain recognition by the act itself that slaves may be emancipated or set free otherwise than according to its direction;" and hence he reaches the conclusion that even if all the terms of that act had not been complied with, the emancipation might still be valid, inasmuch as prior to that act a slave might be emancipated in any manner by which the master might signify his intention to do so. So that even if that decision be regarded as something more than a mere *dictum*, and even as absolute authority, it seems to me that it is not applicable to the present question. The act of 1882 contains no plain recognition of the legality of sales made otherwise than as therein prescribed. On the contrary, the only departure from the mode there prescribed which is recognized by the act is where the mortgagor consents in writing that some other mode may be pursued.

The other case of *State* v. *Massey* (2 Hill, 379), as it seems to me, has still less application. In that case it was held that the

failure to comply with the provisions of the act of 1799 requiring a new jury list to be prepared every three years did not vitiate the array, because, as it was said by O'Neall, J., in delivering the opinion: "This is purely directory to public officers in the discharge of their duty. * * * It was not intended to secure any right, benefit, or privilege to the defendant; it was merely to regulate the drawing of the jury in such a way as to divide the duty of serving upon the jury among the inhabitants of a district." Surely no such remarks as these would be applicable to the provisions of the act of 1882.

MR. CHIEF JUSTICE SIMPSON. I concur in the result on the ground stated in the separate opinion of Mr. Justice McIver.

Judgment affirmed.