## GREEN v. SCRUGGS.

CHATTEL MORTGAGES.—If the mortgagee take part of the mortgaged chattels without sale, mortgagor is entitled to credit on the mortgage debt to the extent of the proportion in value that the chattels taken bear to the entire property mortgaged.

Before TOWNSEND, J., Cherokee, July, 1905. Reversed.

Action by T. A. Green against Geo. D. Scruggs and M. J. Hicks. From circuit order reversing judgment of magistrate, plaintiff appeals.

*Messrs. R. K. Carson* and *W. S. Hall, Jr.,* for appellants, cite: 28 S. C., 258; 31 S. C., 168; 16 Misc., N. Y., 72; 37 N. Y. Supp., 663; 73 N. Y. St., 283; 5 Mich., 423; 2 Lowy. U. S., 231; 11 Fed. Cas., No. 5, 883; 7 Nat. Bank Reg., 61; 42 Mich., 119; 5 N. W., 291; 1 S. C., 129.

*Messrs. Butler & Osborne,* contra, cite: 31 S. C., 168; 28 S. C., 258; 47 S. C., 374; Code 1902, 3004.

March 3, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought by T. A. Green in a magistrate's court to recover $48.58, an alleged unpaid balance on a promissory note dated August 16, 1901. When the note was given it was secured by chattel mortgage on a buggy, a wagon and a set of harness. The mortgage provided upon default this property might be sold at public auction for cash on five days' notice, the proceeds of sale to be applied to the debt and the cost and expenses of collection, and the surplus, if any, paid to the mortgagors. The buggy was seized and, at a sale made as required by the mortgage, brought $2.50. The harness was seized but never sold or accounted for. The wagon was not taken from the defendants.

The magistrate held if the mortgagee had seized the entire property and had converted it to his own use without a sale, as provided by the contract, this would have operated as a satisfaction of the entire debt; but as the mortgagee had so converted the harness only and had duly advertised and sold the buggy, there should be a credit on the mortgage debt to the extent and in the proportion that the value of the property converted bore to the value of the property sold, and gave judgment accordingly for $19.65 and $6.00 costs. Subsequently, the magistrate granted a new trial on the ground that he should have allowed the credit in the proportion that the value of the property converted bore to the value of the whole property mortgaged, including the wagon. On appeal the Circuit Court held that the seizure and conversion of the harness, though only a portion of the mortgaged property, without sale as provided by the contract, operated as a satisfaction of the entire debt.

It is remarkable that so little authority can be found on the precise point in issue. Our statute provides: "When any personal property under pledge, mortgage or hypothecation is to be sold for the purpose of satisfying the loan or debt secured by such pledge, mortgage or hypothecation, the

pledgee, mortgagee or person holding the instrument show-
ing the hypothecation shall advertise the time and place of
said sale by posting a notice thereof, in writing, at least (15)
fifteen days before such sale in three (3) public places in
the county in which such personal property may be found,
one of which shall be the court house door, or shall publish
the same at least two weeks in a newspaper published in his
county, unless the person making such pledge, mortgage or
hypothecation, or his legal representative, shall consent, or
shall have consented, to a sale in some other mode or at some
other notice, such consent to be expressed in writing." Civil
Code, section 3004.

But for this statute and the force given to it by the Court
in the cases hereafter mentioned, we should regard the case
of *Moody* v. *Haselden,* 1 S. C., 129, conclusive of the ques-
tion. In that case, the debt being secured by a mortgage on
land and slaves, the mortgagee seized the slaves, but returned
them to the mortgagor, taking from him a bond for their
forthcoming on salesday in March, 1862; and they remained
in the hands of the mortgagor uncalled for until lost by
emancipation. It was not held that the seizure of the mort-
gaged property operated as a satisfaction of the mortgage,
though the action for foreclosure was between the assignee
of the mortgage and the purchaser of the land from the
mortgagor, but that the purchaser of the land had an equity
to require the value of the slaves at the time of the seizure to
be applied as a credit on the mortgage, and the lien of the
mortgage on the land reduced to that extent.

In 1879, long after this case arose and was decided, the
statute, which is quoted above in its amended form, was en-
acted, regulating the sale of chattels by mortgagees. In con-
struing this statute, it was said in *Bank* v. *Holman,* 31 S. C.,
161, 169, 9 S. E., 824, that if a mortgagee converts the prop-
erty to his own use, "he is still liable to account to the mort-
gagor for any excess in its value over and above the mort-
gage debt; and if such value is less than the mortgage debt,
he forfeits or waives all claims against the mortgagor

for any deficiency, by reason of his illegal conduct in dealing with property entrusted to him for a specific purpose and to be dealt with in the manner prescribed by law. So if the mortgagor undertakes to sell in any other way than that prescribed, he thereby converts the property to his own use, and the same consequences follow." It is true, the case was decided on other grounds, but the language above quoted was the expression of the views of Associate Justice McIver, in which Chief Justice Simpson concurred, and is, therefore, entitled to the greatest consideration. In that case, however, it is important to observe the discussion was limited to the effect of a seizure and conversion wihout a statutory sale of the entire mortgaged property; and the conclusion reached by the Court is strengthened by the application of this other well established principle: if the mortgagee acquires the entire mortgaged property by private sale to him, in the absence of special circumstances not involved here, his acquisition of the title operates as a satisfaction of the mortgage. So if the mortgagee converts the entire property illegally, the mortgagor may elect to regard him as having acquired the title, and claim from him the same benefit he would have been entitled to if the title had been rightfully acquired, that is, the extinguishment of the mortgage. It has never been held, however, that the purchase of a portion of the mortgaged property by the mortgagee operates further than an extinguishment of the mortgage to the extent of the proportion in value that the portion purchased by the mortgagee bears to the entire property mortgaged. *Hull* v. *Young,* 29 S. C., 64, 6 S. E., 938.

The most advantageous position that can be taken by the mortgagors in this case is that the mortgagee seized and converted to his own use the harness, and that they now elect not to assert their statutory right to have the harness sold, at public auction, but to treat it as mortgagee's property, though wrongfully acquired, and recognize his title. To this state of facts the doctrine stated in *Hull* v. *Young, supra,* which is entirely consistent with the views expressed

by the Court in *Bank* v. *Holman, supra,* is applicable; and the result is that the mortgagor was entitled to credit for the harness on the mortgage debt to the exent of the proportion in value that the harness bore to the entire property mortgaged.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded by that Court to the magistrate's court for the new trial ordered by him.