12473

GENERAL MOTORS ACCEPTANCE CORPORATION
v. HANAHAN

(143 S. E., 820)

1. CHATTEL MORTGAGES—LIEN OF MORTGAGE, ACTIVE WHEN MORTGAGED AUTOMOBILE WAS DISTRAINED, IS PRIOR TO LANDLORD'S CLAIM FOR RENT.—Lien of chattel mortgage, if active when mortgaged

---

NOTE: As to effect of landlord's lien or right of distress on property sold to tenant on conditional sale, see annotation in 45 A. L. R., 949.

automobile was distrained by owner of building in which stored, is entitled to priority over such owner's claim for rent.

2. CHATTEL MORTGAGES—THERE MUST BE VERY SUBSTANTIAL GROUND TO DENY RECORDING OF CHATTEL MORTGAGE, SECURING UNPAID NOTE, EFFECT OF CONSTRUCTIVE NOTICE TO SUBSEQUENT CREDITORS AND PURCHASERS.—There must be some very substantial ground to deny the due recording of a duly executed chattel mortgage, securing note which has not been paid, the effect of constructive notice to all subsequent creditors and purchasers.

3. CHATTEL MORTGAGES—RULE AS TO EXTINCTION OF MORTGAGE LIEN BY TAKING POSSESSION OF CHATTEL IS SAME AS TO BOTH MORTGAGEE AND MORTGAGE ASSIGNEE.—The rule as to extinction of mortgage lien by taking possession of mortgaged chattel on breach of condition is the same as to assignee of mortgage as to mortgagee.

4. CHATTEL MORTGAGES—MORTGAGEE MAY CONVERT MORTGAGED PROPERTY BY SELLING OR DESTROYING IT.—Mortgagor may establish mortgagee's conversion of mortgaged chattel by showing that mortgagee, after seizing it on condition broken, converted it to his own use, sold it at private sale or irregular public sale, disposed of it beyond mortgagor's reach, destroyed or negligently suffered destruction of it, or in any other way annihilated or impaired exercise of mortgagor's equity of redemption, but, if none of such acts has been committed, and chattel is still in mortgagee's possession, mortgagor's remedy is limited to enforcement of equity of redemption.

5. CHATTEL MORTGAGES—MORTGAGE LIEN CANNOT BE EXTINGUISHED AND EQUITY OF REDEMPTION ANNIHILATED IN ACTION BY MORTGAGE ASSIGNEE AGAINST LESSOR OF BUILDING IN WHICH MORTGAGED AUTOMOBILE WAS STORED WITHOUT MAKING MORTGAGOR PARTY. —Issue of conversion of mortgaged automobile by mortgagee taking possession on breach of condition being one between mortgagor and mortgagee, mortgage lien cannot be declared extinguished and mortgagor's equity of redemption annihilated in claim and delivery proceeding by mortgage assignee against lessor of building in which car was stored, without making mortgagor a party, even if car is not worth amount of mortgage debts.

6. CHATTEL MORTGAGES—LESSOR OF BUILDING IN WHICH MORTGAGED AUTOMOBILE WAS STORED CANNOT SUSTAIN CLAIM OF CONVERSION BY MORTGAGEE, WHERE MORTGAGOR CANNOT.—Where mortgagor cannot sustain claim of conversion by mortgagee, lessor of building in which mortgaged automobile was stored cannot sustain such claim; being in no better position than mortgagor.

7. CHATTEL MORTGAGES—TAKING POSSESSION ON CONDITION BROKEN AND DELAYING IMMEDIATE FORECLOSURE DO NOT CONSTITUTE "CONVER-

SION" OF MORTGAGED CHATTEL.—Simple taking of possession of chattel mortgage by mortgagee on condition broken and delaying immediate foreclosure by sale do not constitute "conversion."

8. CHATTEL MORTGAGES—MORTGAGEE MAY TAKE POSSESSION OF MORTGAGED AUTOMOBILE ON CONDITION BROKEN.—Mortgagee has legal right to take possession of mortgaged automobile on condition broken.

9. TROVER AND CONVERSION—CONVERSION IS TORT, WHICH CANNOT SPRING FROM EXERCISE OF LEGAL RIGHT.—Conversion is a tort, a wrongful act, which cannot spring from the exercise of a legal right.

10. CHATTEL MORTGAGES—MORTGAGE DEBT IS SATISFIED BY MORTGAGEE'S POSSESSION OF MORTGAGED CHATTEL ONLY WHERE APPROPRIATED TO HIS OWN USE.—It is only where mortgagee appropriates a retaken chattel to his own use that mortgage debt is satisfied by his possession of it.

11. CHATTEL MORTGAGES—MORTGAGEE NEED NOT FORECLOSE WITHIN CERTAIN TIME AFTER TAKING POSSESSION OF MORTGAGED CHATTEL ON CONDITION BROKEN.—Mortgagee is not required to foreclose within certain time after taking possession of mortgaged chattel on condition broken; only limitation on such possession being that he shall not exercise such dominion or make such appropriation of property to his own use or such disposition thereof by private sale or irregular public sale as will destroy or embarrass mortgagor's equity of redemption.

12. CHATTEL MORTGAGES—MORTGAGOR MAY EXERCISE EQUITY OF REDEMPTION WITHIN STATUTORY PERIOD WHILE MORTGAGEE IS IN POSSESSION WITHOUT HAVING DONE ANYTHING PREJUDICING SUCH EQUITY, BUT OTHERWISE MAY INVOKE REMEDY OF CONVERSION.—As long as mortgagee is in possession of mortgaged chattel after condition broken, without having committed any act to prejudice of mortgagor's equity of redemption, mortgagor may exercise such right within statutory period of six years, but, if such act is committed by mortgagee, may invoke remedy of conversion, and make mortgagee account for value of converted property.

13. CHATTEL MORTGAGES—LIEN OF CHATTEL MORTGAGE CONTINUES AS LONG AS MORTGAGOR'S RIGHT TO REDEEM.—So long as mortgagor's right to redeem continues, the lien of chattel mortgage continues for protection of mortgagee.

14. CHATTEL MORTGAGES—MORTGAGEE DOES NOT ACQUIRE ABSOLUTE TITLE TO MORTGAGED CHATTEL ON CONDITION BROKEN.—Though title to mortgaged chattel passes to mortgagee only on condition broken, mortgagee does not acquire absolute title; mortgagor having right to redeem until extinction of lien by sale for satisfaction of mort-

gage debt and to recover for conversion, if property is sold at private sale as mortgagee's own.

15. Landlord and Tenant—Landlord Cannot Seize, Under Distress for Rent, Mortgaged Automobile Stored in Building Occupied by Mortgagee as Subtenant (Civ. Code 1922, § 5285).—Landlord cannot seize, under distress warrant for rent, a mortgaged automobile stored in building occupied by mortgagee as subtenant; such automobile not belonging to tenant in his own right, as required by Civ. Code 1922, § 5285.

16. Chattel Mortgages—Chattel Mortgage Does Not Vest Title to Mortgaged Property in Mortgagee at Date of Execution (Acts 1791 [5 St. at Large, pp. 169, 170]; Civ. Code 1922, § 5223).— Chattel mortgage does not vest title to mortgaged property in mortgagee at time of execution of mortgage, though Acts 1791 (5 St. at Large, pp. 169, 170), Civ. Code 1922, § 5223, providing that title to mortgaged realty shall remain in mortgagor, makes no reference to personal property.

Before Townsend, J., Richland, May, 1927. Reversed and remanded.

Action by the General Motors Acceptance Corporation against Mary E. Hanahan. Judgment for defendant, and plaintiff appeals.

*Messrs. Frank G. Tompkins* and *Heyward Brockinton,* for appellant, cite: *Unrecorded assignment of chose in action valid:* 97 S. C., 291; 113 S. C., 140. *"Chattel Mortgage":* 112 S. C., 243. *As to distress of rent:* Secs. 5285– 5286, Code; 26 S. C., 331; 107 S. C., 280; 1 McC., 486; 36 S. C., 75. *Upon breach of condition of mortgage of personal property, legal title vests in mortgagee subject to equitable right of redemption by mortgagor:* 51 S. C., 42; 105 S. C., 137; 106 S. C., 362; 2 R. C. L., 633, Sec. 43. *As to direction of verdict:* 138 S. E., 675; 118 S. C., 297; 61 S. C., 569; 81 S. C., 100; 124 S. C., 68; 53 S. C., 155; 54 S. C., 288; 98 S. C., 185. *New trial proper where verdict against preponderance of evidence:* 112 S. C., 89. *As to rights and securities passing with assignments:* 2 R. C. L., 633; Sec. 5519, Code and 79 S. C., 277, not applicable here. *"Temporary use":* 118 S. C., 9. *Where facts are undis-*

*puted and there can be but one opinion as to their effect, there is question of law for Court:* 68 S. C., 466. *A conscious violation of the rights of another is evidence of willfulness:* 60 S. C., 67; 57 S. C., 213.

*Mr. James H. Fowles,* for respondent, cites: *Proper to leave question of temporary purpose to jury:* 79 S. C., 277; Sec. 5519, Code.

June 14, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action in claim and delivery for the possession of two automobiles. The plaintiff claims as the assignee of conditional sale contracts or mortgages; the defendant as landlord under a distress warrant for unpaid rent. Two cars are involved, under separate conditional sale contracts or mortgages; it will be convenient to consider one of such contracts; the conclusions as to it being applicable to the other as well.

The facts appear to be as follows:

On March 22, 1926, one Thomason purchased an Oakland car from Dixie Motors, Inc., and executed a conditional sale contract or mortgage in favor of that company. The Thomason paper was assigned to the plaintiff on the same day for $210, which was remitted by the plaintiff to the Dixie Company. The contract was duly recorded.

Later in the same year, 1926, Thomason defaulted in his payments and delivered the car to one Mayfield, special representative of the plaintiff, who, in the latter part of July, left the car with the Dixie Company for storage. The mortgage was not foreclosed at the time by the plaintiff.

The Dixie Company occupied the building in which the car was stored and which belonged to the defendant, Mary E. Hanahan; it appears as a subtenant of one Waters, the lessee of the defendant.

The car remained in storage with the Dixie Company until it vacated the premises about October 1st. A few days thereafter Mayfield stored the car with the Cadillac Company, a new lessee and tenant of the defendant. It remained there until December 7th, when it was seized under a distress warrant for rent issued by the defendant for arrears of rent alleged to be due to her by the tenants Dixie Company and Waters. The present action in claim and delivery was then begun by the plaintiff assignee of the Thomason mortgage. It was tried before Judge Townsend and a jury, May, 1927, and resulted in a verdict for the defendant for the possession of the car or its value, $200. From the judgment entered thereon the plaintiff has appealed. Its main exception is the refusal of his Honor, the presiding Judge, to direct a verdict in favor of the plaintiff.

It appears to be conceded that, if the lien of the mortgage had been active at the time the car was distrained by the defendant, it would have been entitled to priority over the defendant's claim for rent. This is settled by the cases of *Farmers' & Merchants' National Bank of Lake City v. Bank of Hemingway,* 113 S. C., 140; 101 S. E., 746. *Ex parte Knobeloch,* 26 S. C., 333; 2 S. E., 612, and *Morgan Co. v. Bobo Co.,* 107 S. C., 280; 92 S. E., 720. The mortgage was duly executed, duly recorded, duly assigned to the plaintiff; the note which it secured has not been paid. There must therefore be some very substantial ground for denying to the recording, the effect of constructive notice to all subsequent creditors and purchasers under the recording statutes. This effect is denied to the mortgage by the defendant, upon two grounds: (1) That the act of the plaintiff, assignee, in taking possession of the car, upon breach of the condition, extinguished the lien of the mortgage; (2) that the title to the car, at the time of the distress for rent, had become absolute in the

assignee, and that it could no longer have a lien upon property *which it owned.*

It will be more convenient to dismiss the feature of an assignment and treat the plaintiff as the mortgagee; the rule being the same as to assignees and mortgagees, so far as the question here involved is concerned.

Ordinarily, the question of the extinguishment of the lien of a chattel mortgage arises in a controversy between the mortgagor and the mortgagee, in an effort by the mortgagor to establish a conversion by the mortgagee of the mortgaged chattel. This he may succeed in doing by showing that the mortgagee, after seizure of the chattel upon condition broken, has converted the chattel to his own use; or has sold it at private sale; or has irregularly sold it at public sale; or has disposed of it beyond the mortgagor's reach; or has destroyed it; or has negligently suffered it to be destroyed; or in any other way annihilated or impaired the exercise of the mortgagor's equity of redemption. If none of these acts has been committed, and the chattel is still in the possession of the mortgagee, the mortgagor's remedy is limited to the enforcement of his equity of redemption.

The strikingly extraordinary feature of this case is that it is not a controversy between mortgagor and mortgagee, but between mortgagee and the landlord of the premises upon which the chattel was found; premises of which the *mortgagor* was the tenant; an effort, regardless of the interests and rights of the mortgagor, to secure an adjudication that there has been a conversion, an extinguishment of the lien of the mortgage, the vesting of an absolute title in the mortgagee; so that the defendant, landlord of the premises, may reap a benefit from the bailment statute against property which did not belong to her tenant.

It seems that the issue of conversion is one between the mortgagor and the mortgagee; one which certainly should

not be decided in a proceeding to which the mortgagor is not a party. It is proposed to adjudicate the rights as between the mortgagor and the mortgagee by declaring an extinguishment of the lien and an annihilation of the mortgagor's equity of redemption in a proceeding to which the mortgagor is not a party. It is conceivable that this equity of redemption, which may continue for the period fixed by the statute of limitations, may be a valuable right in the mortgagor; the chattel may be worth many times the amount of the mortgage debt; and, without consulting the mortgagor, it is proposed to say that, because the mortgagee did what he had the unquestioned right to do—take possession upon breach of condition—all rights of the mortgagee are gone, and all rights of the mortgagor are annihilated, in the interest of the landlord who never had the remotest claim to, or interest in, the property. This does not seem just.

In this particular case, it is entirely probable that the cars were not worth the amount of the mortgage debts; but the principle is the same as if they had been worth much more.

Even the mortgagor, under the circumstances, could not have sustained a claim of conversion, and certainly, if he could not, the defendant landlord can occupy no better position than he.

It appears that, after the notes became due, demand was made upon the maker for payment; he was unable to pay, and surrendered possession of the chattel to the agent of the plaintiff, who stored it in the store occupied by Dixie Motors, Inc., the tenant of the defendant landlord. There it remained until seized by the defendant under a distress warrant against the tenant. Nothing whatever appears to have been done with reference to the car, except to allow it to remain in the possession of the bailee for storage; not a single act on the part of the plaintiff which could by any possibility defeat or impair the equity of redemption of the mortgagor.

Under these circumstances, the mortgagor could not successfully assert a claim that conversion had taken place, and it is difficult to perceive how the landlord could assert a claim which the mortgagor could not.

If the mortgagor could assert and maintain such a claim, it would mean that the simple fact of taking possession of the chattel and delaying the immediate foreclosure by sale would constitute a conversion. This is not the law.

There can be no doubt that in taking possession of the car, upon condition broken, the plaintiff was exercising a plain, well-defined, legal right. Authorities to sustain this proposition are not required. Conversion is a tort, a *wrongful* act, which in the nature of things cannot spring from the exercise of a legal right.

In *Jones, Chat. Mtgs.* (2d Ed.), § 695, it is said:

"This (the mortgagee's) possession of the mortgaged chattels, no more cuts off the mortgagor's right of redemption, than the like taking of possession of the mortgaged real estate interferes with the mortgagee's (mortgagor's?) right to redeem."

At Section 702 the author says:

"The mortgagee is not bound, upon taking possession for condition broken, to foreclose his mortgage by a sale, although the mortgage contain a stipulation that he shall pay over to the mortgagor the proceeds of the sale after satisfying the mortgage debt. *His failure to sell the property does not make his possession wrongful.* He may keep the goods, and, if he has other security for the debt, such, for instance, as a mortgage upon real estate, he will be required to account for their value. * * * The mortgagee's possession after default does not become wrongful through his failure to sell the property. If the mortgagor wants the property he must redeem."

"It is only where the mortgagee appropriates a retaken chattel to his own use that the mortgage debt is satisfied by

his possession of it." *Bloomingdale v. Gaudio,* 85 Misc. Rep., 389; 147 N. Y. S., 482.

There is no law which requires the mortgagee, after taking possession of the chattel upon condition broken, to foreclose within a certain time. The limitation upon his possession thus acquired is for the benefit of the mortgagor, the protection of his equity of redemption, that the mortgagee shall not exercise such dominion over, such appropriation of, the property to his own use, or such disposition by private sale or irregular public sale, as will destroy or embarrass the mortgagor's equity of redemption.

As long as the mortgagee is in possession, not having committed any act to the prejudice of the mortgagor's equity of redemption, the mortgagor, within the statutory period of six-year limitation, may exercise that right. If such act shall have been committed by the mortgagee, the mortgagor may invoke the remedy of conversion and make the mortgagee account for the value of the converted property. It seems clear, therefore, that, so long as the mortgagor's exercise of his right to redeem continues, the lien of the mortgage continues for the protection of the mortgagee.

This principle is demonstrated to a mathematical certainty by the case of *Moody v. Ellerbe,* 4 S. C., 21. This case was a sequel to the case of *Moody v. Haselden,* 1 S. C., 129, to which reference is made in the report, for the facts. In that case it appears that in September, 1859, Haselden gave to Ellerbe two mortgages, one of land and the other of slaves, to secure the payment of a debt due by notes. In December, 1861, Ellerbe seized the slaves under his mortgage, but allowed Haselden to retain them upon a forthcoming bond. They remained in Haselden's possession until emancipated in 1865. In the meantime Haselden sold the real estate to two purchasers at different times, and Ellerbe, the mortgagee, assigned the notes and mortgages,

which by successive assignments became the property of Moody. Moody, the last assignee, then instituted foreclosure proceedings on the real estate mortgage against Haselden and the purchasers from him of the land. The Court held that the purchasers of the land had an equity to require that the value of the slaves at the time of the seizure should be applied to the mortgage debt, and that the real estate mortgage was entitled to be foreclosed for only the balance after such application. In a subsequent proceeding, it was ascertained that the value of the slaves mortgaged was equal to the amount due upon the mortgage, and thereupon the bill for foreclosure was dismissed. Later, Moody, the assignee, instituted another action (that reported in 4 S. C., 21), against Ellerbe, who had assigned to him the notes and mortgages executed by Haselden. Moody claimed that the seizure of the slaves by Ellerbe, the mortgagee, in 1861, prior to the assignment by Ellerbe to Moody, in 1863, *satisfied the mortgage,* and that, being satisfied at the time of the assignment, the consideration of the contract of assignment had failed, and that he was entitled to recover from Ellerbe the money paid by him for the assignment. The Circuit Court held that, as the right of redemption in Haselden, the mortgagor, was not barred when the assignment was made, the mortgage, notwithstanding the seizure of the property by Ellerbe, the mortgagee, prior thereto, was a subsisting lien at the time of the assignment, and that therefore there was no failure of consideration. The decree of the Circuit Court was affirmed in an opinion, the whole of which is as follows:

"The only question presented by the plaintiff's exceptions to the referee's report is, whether a mortgagee of chattels has, after seizure of the mortgaged chattels, and before the right of redemption is barred by lapse of time, or otherwise, an assignable interest under his mortgage. It is impossible to discover any solid reason for denying this proposition. The right of the mortgagee to the mortgaged chattels after

seizure, is derived under his mortgage. That instrument is not only the source of his title, but the measure of its character. An assignment of a chattel mortgage by a mortgagee in possession, places the assignee in the same position, as it regards the title to the property and the right of redemption of the mortgagor, as that occupied by the mortgagee before assignment."

In that case the slaves were seized in December, 1861, and retained by the mortgagor upon giving a forthcoming bond; the assignment to Moody was made in October, 1863, nearly two years thereafter. The Court in the case in *Moody v. Haselden*, 1 S. C., 129, held, quoting syllabus:

"Where the mortgagee, after seizure of the chattels allows them to return into the possession of the mortgagor on a forthcoming bond, the legal possession is *in the mortgagee*, the mortgagor holding as his bailee."

So that the possession, constructive as it was, but as valid as if the slaves had been all of the time in the actual possession of the mortgagee, did not affect the lien of the mortgage. If two years' possession did not have the effect of extinguishing the lien of the mortgage, it could hardly be successfully contended that four months, as in the case at bar, would have that effect.

Commenting upon this case, the Court in *Green v. Scruggs*, 73 S. C., 403; 53 S. E., 612, said:

"It was not held that the seizure of the mortgaged property operated as a satisfaction of the mortgage, though the action for foreclosure was between the assignee of the mortgage and the purchaser of the land from the mortgagor, but that the purchaser of the land had an equity to require the value of the slaves at the time of the seizure to be applied as a credit on the mortgage, and the lien of the mortgage on the land reduced to that extent."

In *People's Sav. Inst. v. Miles* (C. C. A.), 76 F., 252, the Court said:

"His failure to sell the property or foreclose the mortgage does not make his possession wrongful. * * * The possession of the mortgagee once peaceably acquired continues to be lawful notwithstanding his failure to sell."

In that case the Court said also:

"Under the modern rule a mortgagee in possession of the mortgaged chattels after breach of condition holds them in the nature of a pledge for the payment of the mortgage debt, and he cannot be deprived of the possession of them until the mortgage debt is satisfied."

In *Rainwater v. Bank,* 108 S. C., 206; 93 S. E., 770, the Court, citing *Reese v. Lyon,* 20 S. C., 17, said:

"That, where the mortgagee is in possession of the property, the mortgagor cannot maintain an action, either for claim and delivery or for damages arising out of the detention of the property, *for the reason that such possession is not wrongful.* That, after condition broken, and before a sale of the property, the only right of the mortgagor is to bring an action to redeem, which is equitable in its nature."

This manifestly refers to the condition of the mortgagee simply being in possession, without having committed any act embarrassing the equity of redemption of the mortgagor. As a matter of course, if the mortgagee has converted the property to his own use, sold it at private sale, sold it irregularly at public sale, destroyed it, or negligently suffered its destruction, or otherwise embarrassed the mortgagor's equity of redemption, it would be vain to remit the mortgagor to an action to redeem; he would unquestionably have a right of action against the mortgagee, establishing a conversion of the property, the application of its value to the debt, the payment of the excess of the value of the property over the mortgage debt (if any) and an adjudication, if the value of the property was less than the debt, that the entire debt had been extinguished.

But, as long as the property was in the possession of the mortgagee, and he had done no act embarrassing the equity of redemption, the mortgagor is limited to that remedy. If under these circumstances the mortgagor would be so limited, how can a third party sustain the claim of conversion which the mortgagor could not?

In the case at bar it does not appear that the mortgagee has done anything to embarrass the mortgagor's equity of redemption, which continues, in the absence of such acts, unimpaired until sale, for a period of six years. It would seem illogical to hold that, as the mortgagee has committed no act impairing the mortgagor's equity of redemption, the mortgagor must pursue that remedy, and is not entitled to claim a conversion of the property, an extinguishment of the lien, a third party may assume a position that the mortgagor could not, and claim a conversion, an extinguishment of the lien, a satisfaction of the mortgage.

In 11 C. J., 590, it is said:

"But where the goods are lawfully taken by the mortgagee from the mortgagor, and no demand is made upon the mortgagee for a compliance with the terms of the mortgage or the return of the property * * * the mortgagee is not guilty of conversion in detaining the goods."

"If possession of personal property be rightfully taken by the mortgagee under a chattel mortgage, the failure to sell the property will not make the possession wrongful." *Bradley v. Redmond,* 42 Iowa, 452.

"The possession of mortgaged chattels by a mortgagee in possession does not become wrongful on condition broken, nor during the time the right of foreclosure exists, where the property remains intact, and the only remedy the mortgagor has is to redeem from the mortgage debt." *Brockway v. Abbott,* 37 Wash., 263; 79 P., 924.

In the case of *Producers v. De Hart,* 107 Okl., 221; 232 P., 387, decided January, 1925, the Court held, quoting syllabus *by the Court:*

"Where defendant has actual possession of property, under a bill of sale, which has the effect of a chattel mortgage, and where such possession has been voluntarily surrendered to defendant by plaintiff, and where plaintiff has not fulfilled the conditions of such chattel mortgage, nor demanded return of such property, nor offered to comply with the conditions of such chattel mortgage, an action for wrongful conversion will not lie."

The law is completely settled that the mortgagor's right to set up a conversion of the chattel by the mortgagee only arises when the mortgagee has done some act, as hereinbefore described, which interferes with the mortgagor's equity of redemption. It seems to necessarily follow from the principle that the mortgagor's remedy, after default and seizure, and before sale, is *imprimis* to redeem; he *must* pursue this remedy, if available; if it has been made unavailable by the act of the mortgagee, he *may* resort to the remedy of conversion.

In *Rentz v. Crosby,* 108 S. C., 431; 94 S. E., 1053, the Court said:

"It is settled in this State * * * that if a mortgagee *shall convert to his own use* all the property embraced in the mortgage, and the value of it shall exceed the debt, then the mortgagee must account to the mortgagor for such excess; that if there be no excess, and even if there be an actual deficiency, the mortgagor (mortgagee?) may demand nothing more of the mortgagee (mortgagor?)."

In 11 C. J., 589, it is said:

"Where the mortgagee is in possession, the exercise by him of any dominion over the property, *inconsistent with the rights of the mortgagor,* or with the relation which he justly sustains to the property, will constitute a conversion, *in case the mortgagor elects to so treat it.*"

In *Hartman v. Ringgenberg,* 119 Ind., 72; 21 N. E., 464, the Court said:

"The rule * * * is that in case the mortgagees take possession of the mortgaged property, and *convert the same to their own use,* that it operates as an extinguishment of the mortgage debt, to the extent of the value of the property at the time it was so taken *and converted* by the mortgagees."

In *Green v. Scruggs,* 73 S. C., 403; 53 S. E., 612, the Court recognizes the rule that a seizure alone will not amount to a satisfaction of the mortgage; that there must, to accomplish this result, be a conversion of the property by the mortgagee to his own use, and cite the case of *National Exch. Bank v. Holman,* 31 S. C., 161; 9 S. E., 824, declaring the same principle. It could hardly be otherwise, when the mortgagee has exercised an unquestioned right, upon condition broken, to take possession of the property. The result can be accomplished only by his conduct *after* having exercised this unquestioned right, by destroying the mortgagor's equity of redemption. Until that be done there can be no loss of rights of the mortgagee.

So in the case of *Darnall v. Darlington,* 28 S. C., 255; 5 S. E., 620:

"* * * Where a mortgagee takes possession of the mortgaged property *and converts it to his own use,* without a sale * * *" the consequences of a conversion follow; not till then.

To the same effect is *Fowler v. Goldsmith,* 131 S. C., 119; 126 S. E., 431:

"A chattel mortgagee's right of possession becomes absolute upon default and remains so until all of the debt is realized from the property." *Daggett v. McClintock,* 56 Mich., 51; 22 N. W., 105.

The contention that the extinguishment of the lien of the mortgage was accomplished by taking possession of the property, and thereby transferring the title to the mortgagee, upon condition broken, is based upon the misapprehension that until that happened the title remained in the mortgagor. The suggestion is that, after the title became thus vested in

the mortgagee, the lien was extinct, for the reason that one cannot have a lien upon property to which he has acquired the title.

Prior to the Act of 1791, Section 5223, Vol. 3, Code, 1922, the execution of a mortgage of either real or personal property constituted a conveyance of the title in the property to the mortgagee. The Act of 1791 (5 St. at Large, pp. 169, 170), provided that as to *real* property, the title should be considered as remaining in the mortgagor, the mortgagee having only a lien thereon for the debt. The act made no reference to personal property, and, as no statute affecting mortgages upon personal property has since been enacted, it follows that the original effect of such a mortgage continues to prevail.

It is a common judicial utterance that upon breach of the condition of a chattel mortgage the title vests in the mortgagee. It would have been more accurate to say that when that happens the right to the possession unites with the title which had existed from the time of the execution of the mortgage.

In *Jones, Chat. Mtg.* (2d Ed.), § 699, it is said:

"In nearly half the states a mortgage of *real* property has come to be regarded as merely a lien, and not a conveyance of the legal title. But a chattel mortgage is *a transfer of the title to the mortgaged property,* and not a lien upon it, even in those states in which a mortgage of real property is regarded as merely a lien upon it and not a title to it in the mortgagee."

In *Hill v. Winnsboro Co.,* 112 S. C., 243; 99 S. E., 836, the Court said:

"As a general proposition, the execution of a mortgage vests the legal title to the property in the mortgagee; and, likewise, gives him the right to the possession of the property, unless there are circumstances indicating that such was not the intention of the parties."

But, even if the title passes to the mortgagee only upon condition broken, the mortgagee does not acquire the *absolute* title to the property.

In *National Bank v. Holman,* 31 S. C., 161; 9 S. E., 824, Justice McIver, later Chief Justice, in a separate opinion concurred in by Chief Justice Simpson, said:

"True, it may be said that, after condition broken, the mortgagee of personal property is the absolute owner of such property, and therefore when he seizes and sells it, he is selling his own, and not the property of another. But while it may be true that the mortgagee has the absolute *legal* title, yet it is well settled that he does not hold the property as his own, but subject to the mortgagor's right to redeem before sale, and even after sale subject to the mortgagor's right to demand an accounting for the proceeds of sale. *So that in fact the mortgagee is not the real owner of the property absolutely* in such a sense as to enable him to use it as his own."

The highest proof that the mortgagee is not the absolute owner of the property is that, if he should sell it at a private sale, as his own, he would be liable to the mortgagor as for a conversion. He seizes the property, as he has the right to do, for the purpose of a sale and the application of the proceeds to his debt. He sells by virtue of his mortgage lien, and, as a matter of course, that lien is not extinguished until the sale has been had. In the meantime the mortgagor has the right to redeem, which presupposes the continued life of the lien; he redeems *from* a lien; which could not be done if the lien be extinct.

It seems clear that the property comes within the exception contained in Section 5285, relating to Distress for Rent:

"* * * And no property shall be seized under a distress warrant for such except such as belongs to the tenant in his own right."

It certainly did not belong to the tenant, and it belonged to the plaintiff only *sub modo*.

We have very grave doubts as to the correctness of the decision of *Simpson v. McDonald,* 79 S. C., 277; 60 S. E., 674; see 45 A. L. R. (note), 949, though our conclusions render unnecessary a consideration of it.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the plaintiff under Rule 27, as to both cars involved.

MR. CHIEF JUSTICE WATTS concurs.

MR. JUSTICE STABLER: I concur in the result. I do not agree to the proposition that a chattel mortgage vests in the mortgagee title to the mortgaged property at the time of the execution of the mortgage; such is not now the law of this jurisdiction. Whatever may have been the earlier holdings of our Courts on this question, the later decisions all tend to the view that the title passes to the mortgagee only upon condition broken. See *Martin v. Jenkins,* 51 S. C., 43; 27 S. E., 948. *Dickerson v. Cleland,* 120 S. C., 221; 112 S. E., 920.

MESSRS. JUSTICES BLEASE and CARTER concur.