12568

YOUNG v. CORBITT MOTOR TRUCK COMPANY

(146 S. E., 534)

512

514

522

524

*Messrs. A. F. Spigner,* and *James S. Verner,* for appellant,

*Messrs. T. P. Taylor, John W. Crews,* and *John Hughes Cooper,* for respondent,

January 29, 1929.

The opinion of the Court was delivered by Mr. Acting Justice C. J. Ramage.

Some time in the latter part of March, 1927, A. W. Martin, representative of Corbitt Motor Truck Company of Henderson, N. C., defendant, and S. K. Young, plaintiff, entered into negotiations for the sale to plaintiff of a truck, known as Corbitt Truck Model 21. It was agreed between Martin and Young that the purchase price of the truck was to be $1,327.00, delivered in Columbia, instead of $1,570.00 f. o. b. Henderson, N. C.; payable $127.00 cash, and twelve notes for $100.00 each, bearing 6 per cent. interest, and secured by a conditional sale agreement. When Martin submitted these papers to defendant company, new papers were prepared, with an additional sum of $11.00 added to each, to cover finance charges, and Martin was instructed to have Young sign them.

When Martin approached Young with a request to sign the new papers, Young refused to do so; whereupon on

March 25, 1927, Martin changed each note from $111.00 to $100.00, and Young signed them. The following was written on the bottom of the "Conditional Sale Agreement": "If this truck does not prove satisfactory it may be turned back and unpaid notes canceled. A. W. Martin."

The notes and conditional sale agreement were all dated March 25, 1927. The notes contain the following: "The express condition of purchase and sale of Model 21 Corbitt Truck No. 217043, for which this note is given, is such that the title and ownership, notwithstanding delivery, does not pass from said Corbitt Motor Truck Company, until this note and interest are paid in full; and if same should become due and remain unpaid, or any portion of the same Corbitt Motor Truck Company, or any of its agents, are hereby authorized to enter upon our premises, or wherever it may be found, and take possession of said Model 21 Corbitt Truck No. 217043, and sell same either at public or private sale, and place proceeds as a credit on this note. This note is to become due and payable upon the removal of the maker from the County in which they reside, or whenever the holder deems itself insecure."

The conditional sale agreement contains the following: "Upon any default in payment or breach of condition or covenant herein made by the Purchaser, or if the Seller shall deem the security for the payment of said notes intended to be afforded hereby insufficient or unsafe, the Purchaser shall on demand by the Seller, forthwith deliver the Corbitt Motor Truck in as good condition as when received by Purchaser upon sale thereof (ordinary wear and tear excepted), to Seller, and should Purchaser fail or refuse upon such demand to deliver the Corbitt Motor Truck as aforesaid to Seller, the Purchaser agrees that the Seller shall have the right without any further notice or demand, forthwith to take possession of the Corbitt Motor Truck, wherever found, and for such purpose Purchaser hereby licenses and authorizes Seller to enter any premises of the Pur-

chaser with or without force or process of law, and forthwith take possession of the Corbitt Motor Truck; if Seller shall so take possession of the Corbitt Motor Truck by reason of any default or breach hereof, or with respect to said notes by Purchaser, Purchaser agrees that all payments made by Purchaser with respect to the indebtedness represented by said notes, shall belong to and be retained by Seller, as liquidated damages for the non-fulfillment or breach of performance of this agreement, for loss in value with respect to the Corbitt Motor Truck, and for the rental value thereof."

On April 7th, the following telegram was sent:

"CFB 162 29 1927 Apr. 7 A.M. 11:30
 "Henderson N Car 7 1056A
"S. K. Young, Columbia, S. C.

"Unless you settle according to our original contract, we refuse to sell you, do not use the truck another trip unless you can settle according to the original agreement.

 "CORBITT MOTOR TRUCK CO."

On April 7, 1927, defendant wrote plaintiff a letter the substance of which was as follows: There is evidently a misunderstanding regarding the sale of the Corbitt Model to you by Mr. Martin; Martin told us about a week ago that the truck was sold on a basis of $1,327.00 plus finance charges and insurance on the deferred balance; this morning we received the twelve notes for $100.00 each, and we sent you a telegram (see above); until the matter can be settled on a satisfactory basis, do not use the truck, and we are instructing Mr. Martin to see you without further delay, and repossess the truck or collect the finance charges based on the original agreement. The letter goes on to state the reasons for not agreeing to the papers as signed.

On April 21, 1927, defendant sent the note to Carolina National Bank, the said note was not paid on the 25th, and on April 26th defendant wrote Martin, who was temporarily at Charleston, S. C., a letter as follows:

"April 26, 1927.

"Mr. A. W. Martin,
"Berkley Court,
"Charleston, S. C.
"Dear Sir:

"We enclose herewith note of S. K. Young, $100.50 due April 25th. We wish you to proceed to Columbia at our expense and collect this note and remit us proceeds; if you cannot collect it, then proceed to take possession of the truck at once, as we do not propose to allow him to use the truck if he is not going to pay us for it. Please give this your prompt attention.

"Very truly,
"CORBITT MOTOR TRUCK CO.,
"R. J. CORBITT, President."

On April 27, 1927, defendant wrote plaintiff the following letter:

"April 27, 1927.

"Mr. S. K. Young,
"1318 Assembly St.,
"Columbia, S. C.
"Dear Sir:

"Your note for $100.50 due April 25th, has been returned to us unpaid by the bank, and we write to ask that you mail us check to cover this at once or pay our Mr. A. W. Martin when he calls on you in regard to same. This is very important and we ask your best attention.

"Very truly,
"CORBITT MOTOR TRUCK CO.,
"N. R. PARHAM, Cashier."

It appears that Martin got the letter inclosing the note on the 27th, and on the morning of the 28th, and very early in the morning, certainly before the stores opened, he found the truck standing in front of the place of business of plaintiff, took it away, and notified the police of his having the

truck; the call to police department came about 7 :00 o'clock in the morning.

Plaintiff brought this action for $3,000.00 damages.

The first question before the Court is: Was the method employed by Martin the proper method to get possession of the truck?

This leads us to a construction of the note and conditional sale agreement set out above; in the note no precedent demand is necessary, while in the conditional sale agreement it is necessary.

Now why there should be one provision in one paper, and quite a different provision in the other, we cannot even surmise.

It does seem that good business judgment should have dictated that there ought to be uniformity in the procedure of retaking the truck.

But we have nothing to do with why this contradiction appears; we must judge the legal consequences that follow.

We observe:

1. That the papers were prepared by defendant and the blanks furnished by it.

2. That these papers were evidently well understood and were in constant use by defendant.

3. That defendant had possession of both these papers and was in a position to know exactly their contents and provisions, and in any case of doubt had the papers before it for use and inspection.

4. On April 27, 1927, defendant wrote plaintiff to mail it a check or to pay A. W. Martin. In case plaintiff had desired to pay Martin, by Martin's own statement, he had no opportunity to do so, as Martin was in Charleston, and as soon as he got back to Columbia, without any delay he seized the truck. At least, according to defendant's letter plaintiff should have been given the opportunity of making payment to Martin.

In construing the two documents above referred to, the note and the conditional sale agreement, we must read them together. By so reading them in the light of facts and circumstances of this case, defendant was compelled to make demand before it could seize the truck. This provision regarding making demand *is in the paper signed by Corbitt Motor Truck Company,* and the said company could not take the truck without making demand.

Especially is this position strengthened by the letter in which defendant stated that plaintiff might pay A. W. Martin and then gave plaintiff *no opportunity to pay the said Martin before the seizure of the truck.*

When defendant by its agent seized the truck without making demand, it was a question for the jury to say whether plaintiff was entitled to any actual and punitive damages. The right to the possession of personal property is jealously guarded by the law, and one who deprives another of the possession of property, his action must be supported by legal grounds; and if no such legal grounds exist, the party so taking the property is liable in damages.

It is not necessary to cite authority for this position, as the principles are plain and of everyday application.

The matter of conversion was purely a question for the jury in this case. The following is a short statement of the law on this question: "Conversion may arise either by a wrongful taking of the chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or by wrongful detention." The above was quoted with approval in the case of *Ladson v. Mostowitz,* 45 S. C., 388, 23 S. E., 49, from the case of *Harris v. Saunders,* reported as a note in 2 Strob. Eq., 370. As was stated by Judge Gary, in the case of *Holliday v. Poston,* 60 S. C., 109, 38 S. E., 451 (quoting 2 Strob. Eq., 370): "Perhaps more accurately defined by another writer thus; a conversion seems to consist in any tortious act, by which the defendant deprives the plaintiff of his goods, either wholly or but for

a time. Any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his right of property, is a conversion."

A later definition: "A 'conversion' is the unlawful exercise of dominion over the property of another." *Sherer-Gillett Co. v. Moore-Barnes Co.,* 114 S. C., 387, 103 S. E., 766.

■ Because his Honor erred in first permitting and allowing the plaintiff to testify to the cost and expenses of procuring another truck, over defendant's objection, to use in his business, and in later ruling that said evidence was incompetent, without specifically instructing the jury to disregard such testimony: the error assigned being that under the second ruling of the Court such testimony was irrelevant, and, therefore, incompetent; that the Judge erred in receiving the same in the first place, and in not directing the jury to disregard it after it had been erroneously admitted, said evidence being highly prejudicial to the rights of the defendant.

"By Mr. Taylor:

"Q. Since your truck has been out of your hands, have you had to get another truck?

"Mr. Dickey: We object to that. He has not alleged any special damages. I think he has to allege them to prove them.

"The Court: That would not be special damages. Any damages that would naturally grow out of another's wrong, are not special damages.

"Q. Since your truck has been taken, have you been out of the use of it? A. Yes, sir.

"Q. Mr. Young, have you had to hire a truck since then to use because of this truck being out of your possession? A. Yes, sir.

"Q. Now, you have had the use of trucks, you have had to use them all the time. What is a truck like that reasonably worth a day?

"Mr. Dickey: We object to that testimony upon the ground that he is attempting to prove special damages and special damages have not been alleged.

"The Court: That would not be special damages. That is one of the measures of damages that the Supreme Court has laid down in a case; a wrong has been done by taking a man's property; the reasonable rental for a like truck as near as possible under the circumstances, without a driver, without oil and without gas.

"A. That depends on how long a trip and so on, how much the truck would have to run. It would be from $10.00 to $30.00 a day, that is what I have paid. I have paid one man over $1,500.00 for a truck.

"Q. What I want is during this period of time, you furnishing your own man, gasoline and oil, ordinarily what would a truck rent for, make us one figure? A. You mean a day?

"Q. Yes. A. From $10.00 to $30.00 a day according to what you have to do.

"Q. In your kind of business? A. Running around here in Columbia, it wouldn't be over $10.00 a day; to go from here to Asheville, it would be $30.00 a day.

"Mr. Dickey: We object to all that testimony on the ground that it is highly speculative. He had not said he had to go there.

"Q. How long have you been out of the use of this truck? A. Ever since April 28th, up to now.

"Q. What was the truck worth when they took it from you? A. I don't know. Mr. Martin told me it was worth $1,600.00 and something delivered here. Corbitt Motor Truck Company wrote me it was worth $1,500.00.

"Mr. Dickey: We object, the letter is the best evidence.

"Witness: I don't know what it is worth. I paid $1,-327.00 for it."

Thereafter the following appears in the record:

"The Court: I have been thinking over something. Do I understand that this truck was taken by the defendant on the 28th of April, and that he immediately attached it on the 28th?

"Mr. Spigner: Yes, sir.

"The Court: After he attached it the rent could not run. That would be tying it up in the law and I have been thinking of that ever since. If they attached it the same day, it wasn't in their power to turn the truck back.

"(Argument by Mr. Cooper on this point.)

"The Court: He would not be entitled to those damages. I think that would be allowing one to take his act of calling on an arm of the Court in taking the property out of the control of the other party to do anything except give a bond. I don't see why when you act that you can turn around to the other fellow and say 'I had a right to do this, if I had not done this, I would have been entitled to those special damages, but I have done this, therefore, you have got to do something else,' which the law does not necessarily say you have got to do, but it is optional with you. He took the risk of getting himself out of those kind of damages when he attached this truck to get jurisdiction of it, which risk he ran and the Court cannot help him.

"That is the fair justice of the thing. I have been thinking about it 15 minutes. So it was his act that put it in the hands of the law and took it out of the control of the other party to turn the truck back and keep damages from flowing.

"Mr. Cooper: The Sheriff, upon our affidavit, got out an attachment which was directed to attach any and all property of the Corbitt Motor Truck Company within its jurisdiction, or so much thereof as was necessary to protect this judgment. The Sheriff attached two trucks of the Corbitt Motor Truck Company. We released one on bond and chose to release the other.

"The Court: They had a right to release neither or both. The act of getting jurisdiction by attaching this truck would not be apt to minimize damages. That act is optional. He has still got his measure of damages which could do justice in the case, which could be conversion, the highest market value necessary to do justice. I don't see why I should let it in. Strike out all of this about renting another truck. I think I had better keep that out if there is doubt about it. He has got his measure."

It will be observed that the attorney for the appellant in objecting to the testimony did not state the ground upon which his Honor ruled out the said testimony; as the objection was that they were special damages, while his Honor ruled the testimony out on the ground that plaintiff had attached the truck in question, and, therefore, had taken the truck out of the control of the other party and could not claim damages as a result thereof.

It is a well-settled principle that, unless a party states a proper ground of objection to testimony, the objection will not be considered on appeal.

But, furthermore, we think his Honor properly eliminated this testimony from the case, under the following principles laid down by Mr. Justice Cothran in *Templeton v. Railway*, 117 S. C., at page 53, 108 S. E., 363: Was there an entirely adequate explanation and correction of the error? Was the erroneous testimony identified? Was the substance of the testimony given with an explanation to the jury of the error in admitting it and a direction to erase it from their mind?

The eighth exception charges error in allowing in evidence the letter of appellant to the Carolina National Bank, wherein appellant added a postscript, inclosing the note for collection, stating that if this party does not pay this note promptly please give us the name of a live active attorney to whom we can send it for collection. We think that this note having been sent to the bank for collec-

tion, this statement in the way of a postscript was competent on the question of punitive damages, and also under the very clear opinion of Mr. Justice Blease in the case of *Nettles v. Nettles,* 138 S. C., 318, 136 S. E., pages 298 and 299.

As to Exceptions 11 and 13:

The Court laid down the rule controlling the measure of damages plaintiff is entitled to in this action for conversion, in the case of *Sizer & Co. v. Dopson,* 89 S. C., 535, 72 S. E., 464, wherein Associate Justice Woods said, speaking for the Court: "In actions for conversion or for the taking and detention of personal property the general rule is that the measure of damages is the value of the property with interest thereon, and the jury may give the highest value up to the time of the trial."

In the case of *Walters v. Laurens Cotton Mills,* 53 S. C., 155, 31 S. E., 1, Judge Pope had this to say: "It is now settled law that, if there is any evidence —legal evidence—tending to prove the cause of action as alleged by plaintiffs, it is not the duty of the Judge to grant a nonsuit; the issue must go to the jury."

We see no error in his Honor's charge; if appellant desired any explanation of the matters set out in the exceptions to the charge, and if, furthermore, they desired any fuller statement of the law, these matters ought to have been called to his Honor's attention at the time; failing to do so by a proper request, appellant cannot now question the same, especially when his Honor charged the law as ably and fairly as he did in this case.

We, furthermore, see no error in the failure to direct a verdict or grant a nonsuit.

It is the judgment of this Court that the exceptions be dismissed and the judgment of the lower Court be affirmed.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Carter did not participate.

MR. JUSTICE COTHRAN (dissenting) : I dissent from the conclusions announced in the opinion of Mr. Acting Associate Justice Ramage for the reasons which follow :

In the "Statement," a part of the Transcript of Record, this appears: "The purpose of the action was to obtain judgment for the sum of $3,000.00, as damages *for the alleged wrongful conversion of a certain Corbitt Motor Truck*."

This statement is sustained by the allegations of the complaint to the effect: "That the above-named defendant possessed itself of the following personal property *belonging to and owned by the plaintiff* (describing the truck), of the value of $1,500.00, and being so possessed thereof the defendant on or about the 28th day of April, 1927, willfully, wantonly, high-handedly and wrongfully *converted the said truck to its own use,* and after demand made therefor before the commencement of this action fails and refuses to deliver or pay therefor," to the damage of the plaintiff $3,000.00.

We begin the discussion then on the perfectly solid ground that the cause of action is a *conversion* by the defendant *of the plaintiff's property*.

The undisputed facts are these :

The defendant, Corbitt Company, had a representative in Columbia by the name of Martin; on March 25, 1927, Martin and the plaintiff, Young, agreed upon a sale and purchase of the truck in question, at the price of $1,327.00 Young agreed to and did make a cash payment of $127.00, leaving $1,200.00 remaining unpaid; for this he gave twelve notes of $100.00 each, the first of which was payable 30 days thereafter on April 25, 1927, and the other eleven on the same day of the following months, May, June, July, August, September, October, November, December, January, 1928, Feruary, and March. The notes bore 6 per cent. interest from date and provided for attorney's fees upon the usual conditions.

The notes were identical in terms, with the exception of the maturity dates. We are concerned mainly with the note that matured on April 25, 1927, a copy of which appears in the report of the case. Particular attention is called to this provision in the note: "The express condition of purchase and sale of Model 21 Corbitt Truck No. 217043 for which this note is given, is such that the title and ownership, notwithstanding delivery, does not pass from said Corbitt Motor Truck Company, until this note and interest are paid in full; and if same should become due and remain unpaid, or any portion of the same, Corbitt Motor Truck Company or any of its agents, are hereby authorized to enter upon our premises, or wherever it may be found, and take possession of said Model 21 Corbitt Truck No. 217043 and sell same either at public or private sale, and place proceeds as a credit on this note. This note is to become due and payable upon the removal of the maker from the County in which they reside, or whenever the holder deems itself insecure." It will be observed that the right to repossess the mortgaged property (the reservation of title contract being equivalent to a mortgage), upon breach of condition, was not made to depend upon a previous demand of possession by the mortgagee; *the breach of condition provided for was the default in the payment of the note,* nothing else; upon the happening of this event the right to repossess was absolute and unlimited.

At the same time the parties executed what is denominated a "Conditional Sales Contract," which also appears in the report of the case. Particular attention is called to the following provisions: *"The conditions of this Agreement Are,* that delivery of the Corbitt Motor Truck by Seller to Purchaser does not pass title thereto, but both the Corbitt Motor Truck and the title thereto shall not pass by such delivery, but are and shall remain vested in and be the property of the Seller and assigns (and any extension or assignment of said notes shall not waive this or any other condition herein contained) until said notes evidencing said installments of pur-

chase price are paid in full." Among the covenants, the breach of which justified a repossession of the property, were that the purchaser shall not sell, let, or incumber the property and should keep it free from all liens, taxes and charges. It provided also that the right to repossess should arise upon default of payment of any note, upon breach of any condition or covenant, and if the seller shall deem the security for the payment of the notes insufficient. The provision is as follows: "Upon any refault in payment or breach of condition or covenant herein made by the Purchaser, or if the Seller shall deem the security for the payment of said notes intended to be afforded hereby insufficient or unsafe, the Purchaser shall on demand by the Seller forthwith deliver the Corbitt Motor Truck in as good condition as when received by Purchaser upon sale thereof (ordinary wear and tear excepted) to Seller, and should Purchaser fail or refuse upon such demand to deliver the Corbitt Motor Truck as aforesaid to Seller, the Purchaser agrees that the Seller shall have the right without any further notice or demand forthwith to take possession of the Corbitt Motor Truck, wherever found, and for such purpose Purchaser hereby licenses and authorizes Seller to enter any premises of the Purchaser with or without force or process of law, and forthwith take possession of Corbitt Motor Truck."

It will be observed that there is a difference in the note and in the contract in reference to repossession. The contention of the plaintiff is that the provision in the contract requires a previous demand and that the provision for repossession in the note, which makes no reference to a previous demand, is controlled by the provision in the contract which requires it.

It appears that after the sale was reported to the company by Martin, with transmission of the notes and contract, the company was dissatisfied with the terms, insisting that Young bear the financing expenses connected with the unmatured paper. Inasmuch as the company accepted the

notes and the contract and when the first note fell due transmitted it to the South Carolina National Bank for collection, I think that any reference to this disagreement is unnecessary and entirely negligible.

On April 21, 1927, four days before the maturity of the note, the company forwarded the note to the South Carolina National Bank for collection. It was not paid at maturity, although by its terms payable at that bank, and was returned unpaid to the company.

On April 26th the company forwarded the note to Martin, who was then in Charleston, directing him thus: "We wish you to proceed to Columbia at our expense and collect this note and remit us proceeds, if you cannot collect it, then proceed to take possession of the truck at once, as we do not propose to allow him to use the truck if he is not going to pay us for it. Please give this your prompt attention."

On April 27th the company wrote to Young: "Your note for $100.50 due April 25th, has been returned to us unpaid by the bank and we write to ask that you mail us check to cover this *at once* or pay our Mr. A. W. Martin when he calls on you in regard to same. This is very important and we ask your best attention."

It appears that this letter was not received by Young until after Martin had repossessed the truck, though on the same day, April 28th.

With a zeal, perhaps "not according to knowledge," Martin having returned from Charleston to Columbia, on the morning of the 28th, before Young had opened his place of business, took possession of the truck which was standing in front of Young's establishment and drove it off. He notified the Sheriff and Chief of Police that he had the car, thinking that Young would conclude that some one had stolen it and give the officers trouble in locating it.

On the same day, the 28th, the present action was commenced and the truck attached, *as the property of the company,* in order to acquire jurisdiction to that extent at least.

The company gave bond, the attachment was released and the truck returned to the company. What disposition was made of it does not appear in the record.

At the close of the testimony for the plaintiff, the defendant moved for a nonsuit upon the grounds which appear in the record. The motion was refused.

At the close of all of the testimony the defendant moved for a directed verdict upon grounds similarly appearing. This motion was also refused.

After the charge of the trial Judge, the jury rendered a verdict in favor of the plaintiff for $300.00 actual damages and $500.00 punitive damages. From the judgment entered upon this verdict, the defendant has appealed.

I shall confine myself to what I consider the determinative issue in the case, that is: The defendant's motion for a nonsuit should have been granted upon the ground that there was no evidence tending to show a conversion of the plaintiff's property by the defendant.

The plaintiff seeks to recover principally upon the ground that the defendant's repossession of the property was without warrant of law, in that it had not been preceded by a demand for the possession of the truck. It is conceded, and the presiding Judge so held, that the plaintiff had made default in the payment of the note due April 25th. In overruling the motion for a nonsuit, he held:

"I am going to have to rule in this case in this way: This man on the stand said he sent a man to the bank, so he knew where the note was payable. He cannot get around that. He was going to the bank, to pay the note and whether he went or not, he wasn't there when the note should have been there, because he said he sent him later with the money. They would not have had the note at a useless time.

"I am going to have to hold in this case that there was default and it turns on this question of equitable or partial or limited interest. I am certain about that and I am going ahead."

That being true, as the majority of the Court held in the case of *General Motors Acceptance Corporation v. Hanahan*, 146 S. C., 257, 143 S. C., 820: "Whatever may have been the earlier holdings of our Courts on this question, the later decisions all tend to the view that the title passes to the mortgagee only upon condition broken." (In opposition to the view of the writer, in that case, that it passed upon execution and delivery of the mortgage, the right of *possession* remaining with the mortgagor until condition broken.) Certainly then, upon the plaintiff's default in the payment of April 25th, the title to and right to possession of the truck passed to the company; and the failure anticipated the maturities of all of the other notes.

The question whether, taking the two papers together, the note and the contract, a demand before repossession was necessary, is not free from doubt. The note permits such repossession without a demand; the contract might be construed, though that is not clear, as permitting such repossession only after demand.

I think that there is much force in the argument of counsel for the defendant:

"That there is no conflict, but that the one supplements the other, appears from this: The notes (folio 43) give the defendant the right to seize the truck only on default of payment, while the sales agreement gives the right to seize the truck (1) upon default in any payment, (2) or breach of condition or covenant made by the purchaser, (3) or if the seller shall deem the security for the payment of the notes intended to be afforded hereby insufficient or unsafe. The covenants and conditions referred to in No. 2, above, are that the purchaser shall not sell, let or encumber the truck, and that he should keep the same free of all liens, taxes and charges, and shall cause the same to be registered and licensed in accordance with law.

"In other words, before the defendant could have seized the truck for a breach of any of the covenants, or conditions

contained in the conditional sales agreement, it would have had to make demand for the truck, but not so when the seizure is made by reason of a failure to pay one of the notes. * * * As pointed out above there is no conflict between the two, the conditional sales agreement being supplementary to the notes, and giving to the defendant the additional right to seize the car upon breach of any of the covenants in the conditional sales agreement. The giving of these additional rights in no way limited the rights given in the notes. It will be noticed that the reason why the defendant seized the car in question was to enforce payment of the notes, and not because of a breach of any of the covenants or conditions in the sale agreement. * * * Construing the notes in this case and the conditional sales contract together, then we see that the defendant, upon breach of the conditions in the note, has the right to seize the truck in question without making a prior demand therefor, and by so doing he committed no wrong against the plaintiff."

That contemporaneous instruments must be construed so as to harmonize apparently conflicting provisions has long been the rule. *Elders v. Feutrel,* 110 S. C., 307, 96 S. E., 541; *Ex parte Powell,* 74 S. C., 193, 54 S. E., 236; *Marlboro Wholesale Grocery Company v. Brooks,* 70 S. C., 494, 50 S. E., 186; *Kammer v. K. of P.,* 91 S. C., 572, 75 S. E., 177.

But assuming that the defendant, although it was seized of the legal title to the property and legally entitled to the possession, had no right to repossess it without a previous formal demand upon the plaintiff for its delivery the pivotal inquiry is whether such repossession constituted a conversion by the mortgagee. At first blush it seems illogical that the plaintiff, who had lost both title and right of possession to the truck, can maintain an action for the conversion of property *which belonged to the defendant.* The theory of conversion is that the defendant has, without authority of law, taken possession of property which *belonged*

*to the plaintiff;* not that he has taken possession of property which *belonged to himself.*

The inquiries are pertinent: What right of the plaintiff was invaded by the alleged unlawful repossession, and what was the remedy of the plaintiff for such invasion?

The utmost extent of the plaintiff's interest invaded, under the assumption upon which I am proceeding, was the right to retain possession until the plaintiff made a demand for the delivery of the truck. *The invasion of this right was a trespass,* remediable by an action for damages. It could in no possible view have constituted a conversion, entitling the plaintiff to the incidents of that relief, the value of the property *(which belonged to the defendant),* with interest from the date of the conversion.

In 38 Cyc., 2020, it is said: "An unauthorized taking of goods, out of the possession *of the owner,* with intent to appropriate them to the taker's use, is a conversion; but there is no conversion for which trover will lie, *where one takes who is entitled to possess, even though he obtain it by force or constructive trespass."*

The plaintiff had, of course, his equity of redemption. This right was not at all affected by the alleged premature repossession, for the property was still in the hands of the defendant, who had done nothing to impair the right of redemption.

I think that the very recent case of *General Motors Acceptance Corporation v. Hanahan,* 146 S. C., 257, 143 S. E., 820, is conclusive of the proposition that the defendant has not been guilty of the tort of conversion. It is there held by the unanimous opinion of the Court (upon this point) : "Ordinarily, the question of the extinguishment of the lien of a chattel mortgage arises in a controversy between the mortgagor and the mortgagee, in an effort by the mortgagor to establish a conversion by the mortgagee of the mortgaged chattel. This he may succeed in doing by showing that the mortgagee, after seizure of the chattel upon condition bro-

ken, has converted the chattel to his own use; or has sold it at private sale; or has irregularly sold it at public sale; or has disposed of it beyond the mortgagor's reach; or has destroyed it; or has negligently suffered it to be destroyed; or in any other way annihilated or impaired the exercise of the mortgagor's equity of redemption. *If none of these acts has been committed, and the chattel is still in the possession of the mortgagee, the mortgagor's remedy is limited to the enforcement of his equity of redemption."*

The same conclusions were reached by the Alabama Supreme Court in the case of *Harmon v. Bank,* 186 Ala., 360, 64 So., 621: "Under the theory of mortgages prevailing in this State, nothing can be clearer than the proposition that after default the legal title of the mortgagee is perfect. Indeed, foreclosure adds nothing to the legal title, and its only office and value is to cut off the equity of redemption. The mortgagee's legal title carries, of course, the right of possession and, in the case of chattels, possession taken by the mortgagee after default leaves in the mortgagor no interest except an equity of redemption—which is cognizable and enforceable only in a Court of Equity."

It is true that in the *Hanahan case,* the mortgagee was in possession of the chattel by consent of the mortgagor, but that distinction does not make a difference in the case at bar. It does not alter the conclusion that there has been no conversion. In the case at bar the plaintiff retained his right of redemption, and also had, what the mortgagor in the *Hanahan case* did not have, a cause of action for the technical breach of his evanescent right of possession until demand be made.

In *Powell v. Gagnon,* 52 Minn., 232, 53 N. W., 1148, the Court said: "Upon a conversion of the property by the mortgagee the mortgagor is entitled to recover the value of his interest, which is the difference between the whole value of the property and the amount of the debt for which it is security. If the mortgagee sell and deliver the property to

another, whether under void proceedings to foreclose or otherwise, the mortgagor may treat it as a conversion, and bring the mortgagee to account for it. It is not so, however, in an abortive attempt to foreclose, in which the mortgagee bids in the property, and still retains the possession. In such case the void foreclosure proceedings do not affect the mortgage, nor the rights of the parties in the property, nor their relations to each other."

In *Southwick v. Himmelman,* 109 Minn., 76, 122 N. W., 1016, it is held that: "If the foreclosure was unauthorized and wrongful, and, therefore, unlawful [in that case it was attempted before default], defendant converted the property without right, and is liable in trover. Jones on Chattel Mortgages, 437. *The rule would be different if the right of foreclosure in fact existed and the foreclosure proceedings were merely defective in form."*

There is no conversion in the absence of a wrongful appropriation or of intent to make a wrongful appropriation. *Greencastle v. Martin,* 74 Ind., 449, 39 Am. Rep., 93.

"A mortgagee is guilty of conversion when he takes possession of the mortgaged property before he is entitled to under the terms of the mortgage *and sells it."* 11 C. J., 589. "And if he (the mortgagee) is guilty of trespass in requiring possession, he must respond in damages to the mortgagor." 11 C. J., 559.

The liability of the defendant, for trespass, under the circumstances, is recognized in the cases of *Chase Brothers Piano Co. v. Conners,* 182 Ill. App., 418; *Meyerfield Bloom & Co. v. Roberts,* 14 Ky. Law Rep., 473; *Abramson v. Patts,* 69 Misc. Rep., 64, 125 N. Y. S., 1012.

In an action for trespass, the damages to which the plaintiff would be entitled would represent *the value of the interest invaded;* the right to hold the truck until demand be made. "The value of the plaintiff's interest is the worth of his special property in the article." *Russell v. Butterfield,*

21 Wend. (N. Y.), 300. That certainly would not be measured by the value of the truck plus interest.

The rule as to the measure of damages in cases of conversion sufficiently demonstrates the fallacy of one being entitled to damages based upon an alleged conversion *of another person's property.*

In the case of *Sizer & Co. v. Dopson,* 89 S. C., 535, 72 S. E., 464, the Court said (quoted in the opinion of Justice Ramage) : "In actions for conversion or for the taking and detention of personal property the general rule is that the measure of damages is the value of the property with interest thereon, and the jury may give the highest value up to the time of the trial."

"In trover the measure of damages is the fair, reasonable value of the property converted, which will be presumed to be either what it was worth on the market, irrespective of the price paid for it, or the amount it was subsequently sold for, or what it was actually worth, if it had no market value." 39 Cyc., 2092.

This naturally assumes that the property *belonged to the plaintiff;* how it is logical or possible for the value of the property, to which the *defendant* had title and the right to possession, can be made the criterion of the *plaintiff's* damages for an invasion of his rights, is inconceivable to me.

I think that the true rule is this : If the mortgagee takes possession of the chattel, without the consent of the mortgagor, or in an unlawful way, and retains possession, having done nothing to impair the mortgagor's right of redemption, the mortgagor may exercise that right, and also have a cause of action for the unlawful taking, but not a cause of action for conversion, for there has been none; if he takes possession with or without the consent of the mortgagor, and acts with reference to the property in such a way as to destroy the mortgagor's right of redemption, the mortgagor would have a cause of action for damages as for a conversion, or would have the right to claim a satisfaction of the debt, as

in *Fowler v. Goldsmith,* 131 S. C., 119, 126 S. E., 431, and *Yancey v. Southern Wholesale Lumber Co.,* 133 S. C., 369, 131 S. E., 32.

Is it not remarkable that the plaintiff is suing for a conversion of *his property* and at once has an attachment levied upon the truck *as the property of the defendant?*

The plaintiff is entitled to an accounting by the defendant of the value of the truck, as a credit upon the remainder due upon the eleven notes, and the defendant is entitled to a judgment against the plaintiff for the balance.

In my opinion the judgment of this Court should be that the judgment of the County Court be reversed; that the case be remanded to that Court with directions to order a nonsuit upon the plaintiff's alleged cause of action, with leave to the plaintiff to amend the complaint by demanding an accounting by the defendant of the value of the truck, to be credited upon the notes set up in the defendant's counterclaim; and that the defendant have judgment against the plaintiff for the balance, if any, ascertained to be due upon such accounting.